THE STATE v. JOHN TAYLOR and SAMUEL MONROE.

*Games of Chance—Indictment—Betting Money.*

1. An indictment for betting money on a game of chance which states that the defendants did, with force and arms, etc., unlawfully and wilfully play at a game of cards at which money was bet, sufficiently describes a game of chance.

2. It is a matter of common knowledge that a game of cards is a game of chance.

INDICTMENT for betting money on a game of chance, tried at June Term, 1892, of RICHMOND Superior Court, before *Boykin, J.*

The jurors for the State upon their oaths present that John Taylor and Samuel Monroe, etc., with force and arms, etc., did unlawfully and wilfully play at a game of chance, to-wit, cards, at which money was bet, against the form of the statute, etc.

The defendants were found guilty, and appealed from the judgment pronounced against them.

*The Attorney General,* for the S'ate.

*Messrs. Burwell & Walker* and *W. A Guthrie* (by briefs), for defendant.

AVERY, J.: The Courts take judicial notice of all matters occurring within their jurisdiction, which are of such general and public notoriety that every person of ordinary intelligence may be fairly presumed to know them. *Brown* v. *Piper,* 91 U. S., 37; 1 Greenleaf Ev., 6a; 12 Am. and Eng. Enc., 151; *Deans* v. *Railroad,* 107 N. C., 686. It is matter of universal knowledge that "a game of chance, to-wit, cards," means one that is played with an ordinary deck of cards, and no citizen of North Carolina arraigned upon an indictment containing such a designation of the offence, would fail to understand from reading it that he was charged with hazarding money upon the result of a game played with such cards, as the instruments, and from which neither skill nor intelligence could entirely eliminate the risk. If the indictment is defective at all, it is because it fails upon its face to give the accused such specific notice of the nature of the charge.as will enable him to prepare his defence. Any man of ordinary intelligence would feel that it was a reflection upon him, if not an insult, were he gravely told that he did not know what is the universal interpretation given to the expression "playing a game of chance with cards." It would be absurd to require the prosecuting officer, when he can make himself understood by persons accused without doing so, to take a course of training from experts, so that he could elucidate the generally accepted rule for playing every game of cards, from "baccarat" to "five up." It is a matter of universal knowledge that no game played with the ordinary playing cards is unattended with risk, what-

ever may be the skill, experience or intelligence of the gamesters engaged in it. From the very nature of such games, where cards must be drawn by and dealt out to players, who cannot anticipate what ones may be received by each, the order in which they will be placed or the effect of a given play or mode of playing, there must be unavoidable uncertainty as to the results. When volumes are written, as is universally known, to acquaint persons, who may desire such information, with the nature of all games played with cards and to advise them of the principles upon which skilful players can diminish the hazard, there is no longer any reason for apprehending that the description of an offence, in the language of the indictment in this case, will not be sufficiently understood.

The testimony for the State tended to show that one of the defendants came into a wagon lot in the town of Rockingham, and said he could "beat any man a game of five up for twenty-five cents," and thereupon the two defendants began to shuffle and deal cards and to bet twenty-five cents on the game and to pass money from one to the other, until defendant Taylor rose from the ground where they were playing and walked off, when the other defendant said "I have strapped him." It is not material that there was contradictory testimony, since the question submitted for our decision is whether the defendants were guilty, not in every, but in any, aspect of the evidence. Our case is easily distinguishable from those cited and relied on by the defendants. *State* v. *Bishop*, 8 Ired., 266; *State* v. *Gupton, Ibid*, 271. The result of a game of ten-pins is as manifestly dependent upon the skill of the roller, as that of a wrestling match is dependent upon the strength, agility, training and endurance of the wrestlers. On the other hand, where the public generally do not know the nature of a game, and the jury find that it is a game dependent upon skill, the Court cannot take judicial knowledge of its nature and correct the finding of the

jury.  We think that it was not error to refuse to instruct the jury that there was no evidence that the game played was a game of chance, or to sustain the motion in arrest of judgment because of defects in the indictment.

No Error.