L. H. ROBERSON v. W. G. STOKES AND W. F. STOKES.

(Filed 9 March, 1921.)

1. Instructions—Evidence—Assault—Damages—Appeal and Error.

In an action to recover damages for an assault, where the evidence is conflicting as to which of the parties were in the wrong, it is reversible error for the trial judge to charge the jury upon the assumption that the version of one of them was the correct one, leaving out the contention of the other party and failing to instruct thereon.

2. Instructions—Assault—Damages—Father and Son—Intervention of Son—Questions for Jury.

While a son may, under certain circumstances, come to the aid of his father, who is being assaulted, he is not justified in using such excessive violence as his father is not permitted to use in his own defense; and where the evidence is conflicting as to whether the father was in the wrong throughout the fight, and that he started it and was the aggressor, it is for the jury to find the facts, including the necessity of intervention by the son, and whether he kept within his privilege, and it is reversible error for the trial judge to present this question hypothetically, which assumes the facts adversely to the appellant.

3. Evidence—Father and Son—Assault—Intervention of Son—Motive—Appeal and Error—Objections and Exceptions.

In a civil action to recover damages for an assault, where there is evidence that the plaintiff's son went to the assistance of his father, evidence is competent which tends to show the son's motive in doing so, but it should be properly confined thereto, and its admission as to other matters tending to prejudice the defense, is erroneous.

**4. Evidence—Competent in Part—Appeal and Error—Objections and Exceptions.**

Where the evidence at the trial is partly competent, an objection thereto must specify the ground upon which it is incompetent, or the complaining party must ask the judge to restrict it within its proper limits, or it will not be passed upon on appeal.

**5. Evidence—Burden of Proof—Admissions.**

Where, in an action for damages for an injury received in an assault, the defendant admits that he had assaulted the plaintiff, and pleads and introduces evidence to show justification, the admission shifts the burden of proof to him.

Appeal by plaintiff from *Bond, J.,* at September Term, 1920, of Pitt.

Plaintiff alleged that he and W. G. Stokes, father of the other defendant, had some disagreement about a telephone, W. G. Stokes seeming to be very much "wrought up" about it. That they got into a heated controversy. Plaintiff testified: "I told him to keep his mouth out of my business; he then stepped over to a pile of bricks, and I shoved him on them; about that time I saw his son, W. F. Stokes, coming with a brick in each hand, and I knew they had me foul. The boy threw one brick at me, which went over my head, but the next one hit me, and I spinned around, wrenched my ankle, and fell; before I could recover and get up, W. G. Stokes jumped astraddle of me and hit me with a brick. I did not know anything else; some boys took me up. When I recovered I found W. G. Stokes standing over me. As a result of the wound I went to the hospital; Dr. Basnight phoned Dr. Taylor, and he took me to the hospital. I think I was in the hospital about ten days. I was totally unable to do anything for about thirty days." Plaintiff further testified that afterwards his ability to labor was considerably impaired, and that he suffered pains in his head, whereas, before he received the blow, he could do any kind of hard work. This testimony is stated first to show the serious character of the assault upon him, and secondly, the wide difference between the parties in their several versions of the facts.

The defendants denied the truth of the plaintiff's testimony, and W. G. Stokes stated, on the contrary, that he and plaintiff had an altercation and plaintiff cursed him. He then said: "I had nothing to defend myself with, and I knew he was dangerous. I walked to a pile of brick and he jumped on me. It was all so quick I hardly knew what had happened, but I heard my son say, 'Get off of papa.' I did not touch him a lick. I was as far as from here to Colonel James from the brick, and had no brick. At the time he jumped on me I was not trying to strike him. He jumped on me and threw me down. I turned him over, but did not hit him. In the trial before I understood that William hit him. . . . The scuffle lasted about one minute and a half. I won't tell the jury whether he was struck in the face while he was standing up or while he was on

me. I was able to turn him over. I am sure he was hit while he was on me, because I was able to turn him over. I stood over him until the people came there and took him away. They all came right over there. I was straddle of him, but I did not offer to hit him; I had nothing to hit him with. I never had a fight in my life. Have never been in court. He did not hit me with a brick. He would have killed me if William had not come to me in time. My son saved my life; he is a heavy man; I am no fighter myself."

W. F. Stokes testified: "I noticed Roberson coming toward my father. He was cursing, and I realized that my father was in danger, and I thought it was my duty to protect him. Roberson had my father down, and running toward him I picked up a brick and threw it at him as a warning, but he did not get off. By that time Roberson was on the bottom and my father was on top. I had two bricks in my hand and I threw both of them. Roberson was on my father when I threw the first and second brick. They were about 10 or 15 feet from the pile of brick. I did not see my father have any brick in his hand. There was no brick within his reach. I threw the first brick as a warning and it went over his head. I knew that the second brick that I threw hit him. It hit him on the head. Then my father turned him over. At the time I threw the second brick I thought it was necessary to save my father's life. I knew it was a matter of life and death. I have known Mr. Roberson all of his life."

The court gave the jury this instruction, to which the plaintiff excepted: "If I go out there today, when one of you has done nothing to cause trouble, and knock you down, and your son sees me with you down, the law says your son has a right to protect you from serious bodily harm at my hands." This instruction was given after his Honor had read from Wharton on Homicide (3 ed.), at bottom of page 775, on the right of a son to defend his father.

The judge also charged that the burden as to both issues was upon the plaintiff, when the defendant, W. F. Stokes, admitted that he had struck the plaintiff with the brick, or that he had hurled the brick at him, "hitting the mark exactly."

The verdict was against the plaintiff as to all the issues, and from the judgment thereon he appealed.

*Julius Brown for plaintiff.*
*F. G. James & Son for defendants.*

WALKER, J., after stating the case: There are twenty-seven assignments of error, but we need refer to only two of them, though there may be others worthy of serious consideration, as strongly contended by the

plaintiff's counsel; but we must not be taken as intimating that there was any error except in the respect now indicated by us.

It was erroneous to charge the jury as set forth in the above statement of the case for two reasons: 1. It was based upon the assumption that defendants' version of the assault was the correct one, whereas there was evidence that defendants were in the wrong throughout, and the jury, therefore, had the law stated to them with only a partial and contracted view of the evidence. This method of charging a jury has been disapproved by us. Where a phase of the evidence is presented to the jury, both contentions in regard to it should be given, otherwise it might cause the jury to give undue weight and significance to the one stated. The very question was discussed in *Jarrett v. Trunk Co.,* 144 N. C., 299, where it was said that although it be not error generally to refrain from giving instructions unless asked to do so, yet care must be taken when the judge thinks proper to instruct the jury upon a phase of the evidence and to expound the law in relation thereto, not only to state it correctly, but to state the law as applicable to the respective contentions of each party upon such phase of the evidence. Having undertaken to tell the jury how they should answer that issue if they found such facts according to plaintiff's contention it was manifestly incumbent upon the court to state the defendant's contentions in respect to such phase of the evidence and to instruct the jury how to answer the issue should they sustain such contention. *S. v. Austin,* 79 N. C., 626; *Burton v. R. R.,* 84 N. C., 197; *Bynum v. Bynum,* 33 N. C., 636; *S. v. Wolf,* 122 N. C., 1081. The phase mentioned by his Honor was flatly denied by the plaintiff, and a very different complexion given to it by him. The judge's illustration, based, as it was, on the assumption that plaintiff was the sole aggressor, and that W. G. Stokes did nothing to bring on the fight, but was illegally assaulted by the plaintiff and knocked down, was not justified by the evidence, as there was plenty of evidence to show that it was not true, but that the defendants were the aggressors, W. G. Stokes having attempted to attack the plaintiff with a brick, and that the latter acted in self-defense, and that the other defendant wrongfully and unlawfully joined in the attack upon him, having no just or legal ground for his intervention, which was simply voluntary and gratuitous on his part. It was therefore required, under the principle stated in *Jarrett v. Trunk Co., supra,* and the cases therein cited, that the judge should have stated both sides of the evidence bearing on that particular phase. Such an instruction was peculiarly required, under the circumstances of this case, and the incompleteness of the one given, in the respect indicated, may have turned the scales against the plaintiff, and probably did. What the judge did say afterwards was not sufficient to cure the error. The instruction also was too broad, because it leaves out of consideration the necessity for the interference

of the son, which is a question for the jury, and apparently omits any reference to excessive force. It was held in *S. v. Johnson,* 75 N. C., 174: "The proposition is true that the wife has the right to fight in the necessary defense of the husband, the child in defense of his parent, the servant in defense of the master, and reciprocally; but the act of the assistant must have the same construction in such cases as the act of the assisted party should have had if it had been done by himself; for they are in a mutual relation one to another. Although the law respects the human passions, yet it does not allow this interference as an indulgence of revenge, but merely to prevent injury. The son, therefore, is allowed to fight only in the *necessary defense* of the father; and to excuse himself he must plead and show that Shipwash would have beaten his father had not he interfered. 3 Bl., 3, and note; 1 Hale Pl. Cr., 484; Bac. Ab., Master and Servant, P. . There was evidence in the case that the father and Shipwash were engaged in a fight upon equal terms, and it not appearing which was the aggressor, the law presumes that they were fighting by mutual consent, and were both guilty. The son, therefore, had no right to make the assault." This question is fully discussed by *Justice Allen* in *S. v. Greer,* 162 N. C., at p. 649, and quoting from Wharton on Homicide, sec. 521, he says: "The general rule, as ordinarily stated, is that a brother or other relative assisting another in resisting a wrongful act directed against the latter can use no more force than the person he assists would be entitled to use, and that interference to protect a relative is not justified where the relative was the aggressor in the original difficulty. A person has a right to use violence in defense of another only when the imperiled person would have been justified in using it in his own defense. Both must have been free from fault in bringing on the difficulty." And further, *Stanly v. Com.,* 9 Am. St. Rep. (Ky.), 306, is quoted as follows: "Not only, however, may he do this, but another may do it for him. This other person, in such a case, steps into the place of the assailed, and there attaches to him not only the rights, but also the responsibilities of the one whose cause he espouses. If the life of such person be in immediate danger, and its protection requires life for life, or if such danger and necessity be reasonably apparent, then the volunteer may defend against it, even to the extent of taking life, provided the party in whose defense he acts was not in fault." The son could do only what his father could rightfully do, and must be judged by his rights and responsibilities, "because," as Hale said, "they are in a mutual relation one to another." The jury must find the facts, including the necessity of intervention by the son, and whether he kept within his privilege. This instruction stated the question hypothetically, which is forbidden. There was evidence that the father not only entered into the fight willingly, which

made it an affray in the best view for him and the son, but that he started the fight, and was the aggressor. It has been said by us that hypothetical instructions should not be indulged in, as they proceeded upon the assumption of facts. *S. v. Collins,* 30 N. C., 407; *S. v. Benton,* 19 N. C., 196; *Johnson v. Bell,* 74 N. C., 355.

As to the defendant W. G. Stokes, we need not discuss any of the other exceptions, but we will briefly refer to one piece of evidence. W. F. Stokes was permitted to testify that he went to assist his father, because he heard of threats made by plaintiff, and also knew of them. The testimony was competent to show his motive, or reason, for going to the place, when the affray occurred, but it should have been confined within its proper limits, and to the only purpose for which it was evidently offered, as otherwise it may have prejudiced the plaintiff upon the defendants' pleas of self-defense. Ordinarily, when evidence is competent for one purpose, but not for another, the party objecting should make his objection special, directing it to the incompetent part of the question, or of the answer, as the case may be. It seems here to have been offered only for a competent purpose, and it does not appear that it was otherwise used. We will have to apply Rule 27 of this Court (164 N. C., 438), requiring counsel who objects to evidence which is competent for one purpose but not for another, to specify the ground of his objection, or to ask the judge to restrict it within its proper limits.

As to the defendant W. F. Stokes, we are of the opinion that the judge erred in stating that the burden of proof was upon the plaintiff, as W. F. Stokes admitted that he assaulted the plaintiff, and this admission shifted the burden to him.

We therefore conclude that there should be a new trial as to both defendants for the errors stated by us, and for that reason the verdict will be set aside, and the case will proceed further in the court below according to law.

New trial.