STATE v. WESLEY STROUPE, L. C. CHANDLER, RAY EDWARD McMAHAN AND JAMES V. (PETE) WALKER.

(Filed 12 June, 1953.)

**1. Gambling § 1—**

Whether a game is a game of chance within the purview of G.S. 14-292, or a game of skill, depends upon whether the element of chance or the element of skill predominates in determining the results of the game.

**2. Gambling § 9—**

The evidence as to the rules and method of playing "Negro Pool" *is held* sufficient to be submitted to the jury on the question of whether the game is a game of chance within the purview of G.S. 14-292.

**3. Same—**

Evidence that all defendants wagered money on the results of a game of chance played by some of them *is held* sufficient to overrule their motions to nonsuit in a prosecution under G.S. 14-292.

**4. Criminal Law § 53d—**

The trial judge must charge the jury on every substantial and essential feature of the case embraced within the issues and arising on the evidence, and this without any prayer for special instructions. G.S. 1-180.

**5. Gambling § 10—**

An instruction that "the object of the gambling statute (G.S. 14-292) is to prevent people from getting something for nothing" without defining the term "game of chance" constituting an essential element of the offense charged, *is held* reversible error.

**6. Criminal Law § 81c (2)—**

   Where the trial court gives a correct instruction on a material feature of the case in one part of the charge and an incorrect instruction on the same point in another part of the charge, a new trial must be awarded, since the jury may have acted upon the incorrect instruction.

DEVIN, C. J., dissenting.

JOHNSON, J., concurs in dissent.

APPEAL by defendants from *Pless, J.,* and a jury, January Criminal Term, 1953. GASTON.

Criminal prosecution on an indictment charging Wesley Stroupe, L. C. Chandler, Ray Edward McMahan and James V. (Pete) Walker on 13 October, 1952, with unlawfully and willfully playing at a game of chance at which money and other things of value were bet, and further charging Wesley Stroupe, L. C. Chandler, Ray Edward McMahan and James V. (Pete) Walker did then and there bet on said game of chance.

The State had one witness, Ralph Warren, whose testimony is summarized as follows: About 2:00 p.m. on 13 October, 1952, he was sworn in as a police officer of the Town of Lowell, North Carolina, but there had been no announcement of his appointment, and he was not in uniform. About 6:50 p.m. of that day he went to "the combination grocery-gas station-poolroom" operated by Wesley Stroupe in Lowell. When he arrived, James V. (Pete) Walker and Ray Edward McMahan were playing "Negro Pool" and betting $5 and $8 a game.

"Negro Pool" is a game played on a pool table. At one end of the table is a flat board with holes in it. A picture of two Negroes is at one hole, and a picture of one Negro is at another hole. The other holes are numbered, each hole bearing a different number. Each player draws a pill bearing a number from a leather bottle. To win, the player must select a ball from the table bearing a number, and shoot that ball into a hole bearing a number, the total of which numbers must equal the number on the pill drawn from the bottle. Also a player wins if he shoots his ball into the hole with the picture of one Negro: he wins double if he shoots his ball into the hole with the picture of two Negroes. The players take turns, and the game continues until one wins.

Walker and McMahan played until about 7:40 p.m. Then Jim Chandler and Wesley Stroupe played about five games betting $5 and $8 a game. Then Pete Walker and one Ramsey played, and Stroupe and Chandler bet on the games played by Walker and Ramsey. Warren saw money change hands, but he didn't know who won.

Sometimes a game would continue 5 or 10 minutes; sometimes it would take each man 5 shots before one won; sometimes one would win on the first shot. Warren saw there Levan Beard, Eldon Roberts and Horace Bradford, witnesses for the defendants.

The defendants did not testify for themselves, but offered 5 witnesses. Levan Beard testified for them in substance. He was in this poolroom from about 5 :00 p.m. to 8 :30 p.m. on the day charged in the indictment, and saw all the defendants playing "Negro Pool," but did not see any bets or any money change hands. "You shoot a numbered ball up on the board containing numbers, and if you make your pill, you have won the game." The numbers on the pills and balls are from 1 to 16. The winner displays his numbered pill to support his claim of victory. Eldon Roberts and Horace Bradford testified that they were in the poolroom from about 6 :00 p.m. until about 9 :00 p.m., when Stroupe closed up on the day in question, and saw the defendants, or some of them, playing "Negro Pool," but saw no betting or gambling or money changing hands. The other two witnesses testified Stroupe's reputation for character was good, and one character witness said he went to Stroupe's place nearly every day, but never saw any gambling there.

The jury found each defendant guilty, and the trial judge passed sentences against all of them. All the defendants excepted and appealed, assigning errors.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Robert L. Emanuel, Member of Staff, for the State.*
*Thomas J. Wilson for defendants, appellants.*

PARKER, J. The defendants assign as Error No. One the refusal of the trial court to grant their motion for judgment of nonsuit made at the close of the State's evidence, and assign as Error No. Two the refusal of the trial court to grant their motion for judgment of nonsuit renewed at the close of all the evidence.

The defendants contend that they were playing "Negro Pool"; that "Negro Pool" is a game of skill and not of chance, and that G.S. 14-292 has no application to games of skill. In their brief they state the question involved as to whether their motion for nonsuit should have been allowed "hinges on whether the game as played by the defendants was one of chance or one of skill."

G.S. 14-292. "Gambling.—If any person play at any game of chance at which any money, property or other thing of value is bet, whether the same be in stake or not, both those who play and those who bet thereon shall be guilty of a misdemeanor."

In *S. v. Gupton,* 30 N.C. 271, this Court said : "The universal acceptation of 'a game of chance' is such a game as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance." This was one of the first cases to discuss in detail the meaning of the phrase "game

of chance." 135 A.L.R. Anno. 109. This definition of the illustrious *Chief Justice Ruffin* has become classic for almost its exact words have been used to define "game of chance" in 24 Am. Jur., Gaming and Prize Contests, Sec. 18; in 38 C.J.S., Gaming, p. 35, and 60 A.L.R. Anno. 343. In the *Gupton case* the Court gives as illustrations of games of chance, the game of dice in which the throw of the dice regulates the play or the hand at cards depending upon a dealing with the face down; and as illustrations of games of skill, chess, draughts or chequers, billiards, bowls and quoits. The Court in this case held that the game of tenpins is not a game of chance.

In *S. v. Bishop,* 30 N.C. 266, the jury found "shuffleboard" was not a game of chance. In *S. v. King,* 113 N.C. 631, 18 S.E. 169, tenpins again was held not a game of chance. In *S. v. DeBoy,* 117 N.C. 702, 23 S.E. 167, the Court said this decision has "no application to the long prevailing custom of 'shooting for beef,' shooting at turkeys and other similar trials of skill." These decisions rest upon the rationale that superior knowledge and attention, or superior strength, agility and practice gain the victory, and little or nothing is left to chance. It is true an unseen gravel in the way may deflect a ball in tenpins or bowls or a sudden gust of wind a bullet, but if these incidents are sufficient to make tenpins and bowls or shooting at beef a game of chance, there would be no other games but those of chance. *S. v. Gupton, supra.* See also *S. v. Abbott,* 218 N.C. 470, at pp. 479-480, 11 S.E. 2d 539.

In *S. v. Taylor,* 111 N.C. 680, 16 S.E. 168, it was held that a game of cards was a game of chance. In *S. v. DeBoy, supra,* the Court said "if several parties each put up a piece of money and then decide by throwing dice who shall have the aggregate sum, or 'pool,' this is unquestionably a game of chance." Cases like these rest upon the basis that these games are decided not by judgment, practice, skill or adroitness, but by a turn of a card or the cast of the dice.

In many courts questions have arisen as to the amount of chance that must be involved in the result of a game before it becomes one of chance, or the amount of skill before the game becomes one of skill, or the ratio between chance and skill in a mixed game of chance and skill. "In the absence of statutes and other *indicia* to the contrary, most courts have reasoned that there are few games, if any, which consist purely of chance or skill, and that therefore a game of chance is one in which the element of chance predominates over the element of skill, and a game of skill is one in which the element of skill predominates over the element of chance." 135 A.L.R. Anno. 113. In this annotation many definitions of "games of chance" by many courts are given.

In 135 A.L.R. Anno. 121 it is said: "There is considerable authority that the game of billiards is a game of skill and not a game of chance as

the latter term is used in the popular sense to mean a game in which the result depends upon chance as distinguished from skill or certainty." Cases from various states are cited, and among them is the *obiter dictum* in *S. v. Gupton, supra.* In the same Anno., p. 123, it is said: "The game of pool, of which there are various kinds, has been held to be a game of skill as distinguished from a game of chance, as those terms are used in the popular sense of referring to the elements of skill and chance in the game"; and several cases are cited to support the statement. In *Scott v. Jackson* (1911), 30 N.Z.L.R. 1025, p. 1043, *Williams, J.,* said, as quoted in 135 A.L.R. Anno. 123: "In ordinary language billiards and pool are not games of chance. If any one thinks they are, let him go and play them for a stake, and he will promptly discover his error."

"In *U. S. v. Concepcion* (1917), 37 Philippine 48 (quoted in 135 A.L.R. Anno., p. 124), the game of *'nones y pares,'* played on a billiard table, at which money was bet, was held to be a game of chance . . . The game was described by one witness as follows: The player places himself on the left-hand side of the head of the billiard table. Two balls are placed at a certain distance from the cushion of the left side. The player impels one of these balls against the other and the latter is driven against the upper opposite cushion and, on returning toward the center of the table, touches little pegs. If an even number of these fall down the 'even' win; and if an odd number, the 'odds' win. The player always bets on the 'even,' and others bet on the 'odds.' "

There are many kinds of pool, 135 A.L.R. Anno. 123. It would seem that the test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment. *S. v. Gupton, supra,* and 24 Am. Jur., Gaming and Prize Contests, Sec. 18. "It is the character of the game, and not the skill or want of skill of the player, which determines whether the game is one of chance or skill. A game of chance does not cease to be such because it calls for the exercise of skill, nor does a game of skill cease to be such because at times its result is determined by some unforeseen accident." 38 C.J.S., Gaming, p. 37.

This case is the kind of pool designated as "Negro Pool." A flat board with holes in it is placed at one end of the table. A picture of two Negroes is at one hole; a picture of one Negro at another hole. The holes are numbered. Each player draws a pill bearing a number from a bottle—that is mere chance. To win, the player must select a numbered ball on the table, and shoot that ball into a hole bearing a number, the

total of which numbers must equal the number on the pill; .or the player may win, if he shoots his ball into the hole of one Negro, and may win double if he shoots his ball into the hole of the two Negroes. The number of the pill drawn by chance from the bottle determines the number of combinations the player can make to win, and it would seem, for example, that No. 16 would make available more combinations than No. 3. The cue ball strikes his numbered ball, and shoots it *up on the board* containing the numbers. It is a fact of common and general knowledge that a skilled and experienced player of billiards or pool by striking his cue ball on the top or bottom, or by putting "English" on it, can make the cue ball follow the struck ball, stop when it strikes it, or move back in reverse after striking it, so as to make his next shot easier—that manipulation of the cue ball is what in large measure makes straight billiards and straight pool games of skill. It is well known that billiard and pool tables are flat, and any unevenness on the surface of the table will deflect the course of the cue ball or shot ball. It would seem that when in "Negro Pool" the cue ball shoots the numbered ball *up on the board* with numbers and pictures on it that the hole the ball goes into *up on the board—* whether the hole with the picture of one Negro, or the hole with the picture of two Negroes so as to win double, or the hole with a number— is determined by mere luck or chance or fortuitous accident, and is not dependent on the skill, experience or judgment of the player.

The evidence for the State discloses that Walker and McMahan were playing "Negro Pool" and betting $5 and $8 a game; that beginning about 7 :40 p.m. Chandler and Stroupe played about five games of "Negro Pool" betting the same amount on each game, and that Stroupe and Chandler bet on the games played by Walker and Ramsey. Chandler was indicted as L. C. Chandler. The evidence refers to him as Jim. No point has been made that Jim Chandler is not L. C. Chandler, and manifestly, there is no uncertainty that Jim Chandler is L. C. Chandler.

Considering the evidence in the light most favorable to the State, and giving to it the benefit of every reasonable inference to be drawn therefrom, there was sufficient evidence to carry the case to the jury that "Negro Pool" is a game of chance. *S. v. Smith,* 237 N.C. 1, 73 S.E. 2d 901; *S. v. Shipman,* 202 N.C. 518, 163 S.E. 657. The lower court was correct in denying the defendants' motions for nonsuit made at the close of the State's evidence, and in denying the renewal of their motions for judgment of nonsuit made at the close of all the evidence.

The defendants assign as Error No. 3 the court's charge: "Our Supreme Court of North Carolina has never definitely said whether a game of pool or billiards was a game of chance or not. In its final analysis, however, the object of the gambling statute is to prevent people from getting something for nothing; that is, Gentlemen of the Jury, it is in-

tended by our law that people shall not take the property of another person without rendering some service to the other person." That is their sole assignment of error to the charge.

The essential elements for the State to prove in this case were that the defendants, or some of them, played at a game of chance at which money was bet, and that the defendants, or some of them, bet thereon, for both those who played and those who bet thereon, if any did, are guilty. G.S. 14-292.

"The authorities are at one in holding that, both in criminal and civil causes, a judge in his charge to the jury should present every substantial and essential feature of the case embraced within the issue and arising on the evidence, and this without any special prayer for instructions to that effect." *S. v. Merrick,* 171 N.C. 788, at p. 795, 88 S.E. 501. See also *S. v. Ardrey,* 232 N.C. 721, 62 S.E. 2d 53; *S. v. Brady,* 236 N.C. 295, 72 S.E. 2d 675. To so charge is not only a requirement incident to the great office a trial judge holds to see justice impartially administered, but it is mandatory in our courts by statute law. G.S. 1-180.

Nowhere in the charge did the lower court define for the jury "a game of chance," which was an essential element for the State to prove in this case. Instead of doing so, the trial court attempted to charge the essential elements of G.S. 14-292 by giving what it conceived to be the object of this statute. This part of the charge would lead the jury to believe that the essential element of the offense charged in the indictment was to prevent people from getting something for nothing, rather than whether the game played was "a game of chance" or "a game of skill," and whether or not money or other thing of value was bet thereon. This is prejudicial error for it is an erroneous definition of the essential elements of the offense charged, and would divert the jury into a different field of inquiry.

Perhaps, as contended by the State, if the court had omitted to define "gambling," and omitted the words he used in his charge "and received no benefit or service therefrom" and "having rendered no service or furnished nothing to the person who gave him the money," the charge might not contain prejudicial error under authority of *S. v. Morgan,* 133 N.C. 743, 45 S.E. 1033; and *S. v. Webster,* 218 N.C. 692, 12 S.E. 2d 272.

However that may be, the court undertook to charge the essential elements of the offense contained in the bill of indictment, and the court charged incorrectly. When a judge undertakes to define the law he must state it correctly, and if he does not, it is prejudicial error sufficient to warrant a new trial. *S. v. Wolf,* 122 N.C. 1079, 29 S.E. 841; *Jarrett v. Trunk Co.,* 144 N.C. 299, 56 S.E. 937; *Roberson v. Stokes,* 181 N.C. 59, 106 S.E. 151; *Jones v. Bland,* 182 N.C. 70, 108 S.E. 344.

Whatever the court said later in this case did not cure this error. This Court has uniformly held that where the court charges correctly in one

part of the charge, and incorrectly in another part, it will cause a new trial, since the jury may have acted upon the incorrect part of the charge. *S. v. Morgan,* 136 N.C. 628, 48 S.E. 670; *S. v. Isley,* 221 N.C. 213, 19 S.E. 2d 875; *S. v. Johnson,* 227 N.C. 587, 42 S.E. 2d 685; *S. v. McDay,* 232 N.C. 388, 61 S.E. 2d 86.

We might say in passing that the word "bet" is so universally understood and used that for a court to attempt to define it would be:

> "To gild refined gold, to paint the lily,
> To throw a perfume on the violet."

Shakespeare, King John, Act IV, Sc. II, Lines 11 and 12.

Not infrequently in attempting to define a simple word that has become current coin of expression a thing in itself very plain is obscured. A classic illustration is Dr. Samuel Johnson's oft quoted definition in his Dictionary of "Network" as "Anything reticulated or decussated, at equal distances, with interstices between the intersections."

The exception to the charge is well taken, and a new trial is ordered.

New trial.

DEVIN, C. J., dissenting: In the trial just two questions were presented for determination: (1) Was the game of pool described in the majority opinion a game of chance? (2) If so, did the defendants wager money on the result of this game of chance?

The State's evidence on both points was unequivocal. It was sufficient to make out a case of gambling under the statute. The jury so found.

The only exception was that the able judge who tried this case in the course of his charge to the jury referred to the object of the statute against gambling as being one to prevent people from getting something for nothing. It is thought by the majority that this was too broad an expression, and that it was prejudicial to these particular defendants, necessitating a new trial. There is some justification for saying that one of the basic impulses that induces adventurers to wager on a game of chance is the hope of gain, of obtaining something of value without the expenditure of services or property. However, if the language objected to be regarded as inappropriate, it will be noted it was used in a preliminary general observation, and the jury was presently instructed pointedly on the evidence in this particular case as to the elements of the offense charged against these defendants.

After stating the evidence and the contentions of the State and the defendants, the court charged the jury as follows:

"The court instructs you if you find, and find beyond a reasonable doubt, that the defendants engaged in a game of chance betting upon the outcome, money passing upon the result, in which some persons lost

money and received no benefit or service therefrom, and that others gained money having rendered no service or furnished nothing to the person who gave him the money, I say if you find, and find beyond a reasonable doubt that the defendants did that, it would be your duty to render a verdict of guilty."

In this instruction Judge Pless put the matter clearly and correctly to the jury on the determinative questions at issue. There could be no misunderstanding as to what was necessary to constitute gambling under the statute as applied to these defendants under the evidence in this case. The evidence that the defendants had bet money on a game of chance was positive and credible. It would hardly seem probable that an intelligent jury would have been influenced by a general observation, such as that here complained of, rather than by the direct and positive instruction of the Judge on the evidence in this case as to what was necessary to be found before the defendants could be convicted.

Verdicts and judgments are not to be lightly set aside. The rule is that it must be made to appear not only that the matter complained of was erroneous but also that it was material and prejudicial, amounting to a denial of some substantial right. *Wilson v. Lumber Co.,* 186 N.C. 56; *Rogers v. Freeman,* 211 N.C. 468; *Collins v. Lamb,* 215 N.C. 719; *S. v. Bovender,* 233 N.C. 683 (690). An error cannot be regarded as prejudicial unless there is a reasonable probability that the result would have been different. *Call v. Stroud,* 232 N.C. 478.

In my opinion the verdict and judgment should have been upheld.

I am authorized to say that JUSTICE JOHNSON joins in this opinion.