JOKER CLUB, L.L.C., PLAINTIFF v. JAMES E. HARDIN, JR. DISTRICT ATTORNEY, 14TH JUDICIAL DISTRICT, DEFENDANT

No. COA06-123

(Filed 1 May 2007)

**1. Appeal and Error— appellate rules violations—dismissal of assignment of error**

Plaintiff's first assignment of error is dismissed based on numerous appellate rules violations, because: (1) plaintiff failed to state plainly, concisely, and without argumentation the legal basis upon which error is assigned, and plaintiff failed to include clear or specific record or transcript references directing the Court of Appeals to the assigned error as required by N.C. R. App. P. 10(c)(1); (2) plaintiff failed to file the appropriate transcript as required by N.C. R. App. P. 9(c)(3)(b); and (3) plaintiff failed to identify its assignments of error in the pages of the printed record after listing the question presented and failed to include the applicable standards of review as required by N.C. R. App. P. 28(b)(6).

**2. Gambling— poker—illegal game of chance**

The trial court did not err by denying plaintiff's request for injunctive relief against defendant former district attorney's conclusion that poker is a game of chance that is illegal under N.C.G.S. § 14-292, because: (1) chance predominates over skill

when poker presents players with different hands, making the players unequal in the game and subject to defeat at the turn of a card; (2) although skills such as knowledge of human psychology, bluffing, and the ability to calculate and analyze odds make it more likely for skilled players to defeat novices, novices may yet prevail with a simple run of luck; (3) the instrumentality for victory is not entirely in the player's hand; and (4) in poker, a skilled player may give himself a statistical advantage but is always subject to defeat at the turn of a card which is an instrumentality beyond his control.

Appeal by plaintiff from order entered 1 July 2005 by Judge Orlando Hudson in Durham County Superior Court. Heard in the Court of Appeals 23 August 2006.

*Allen W. Powell for plaintiff-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General David J. Adinolfi, II, for defendant-appellee.*

CALABRIA, Judge.

Joker Club, L.L.C., ("plaintiff") appeals from an order of the trial court, denying its request for injunctive relief against former District Attorney James E. Hardin ("defendant") and concluding that poker is a game of chance that is illegal in North Carolina. We dismiss in part and affirm the order of the trial court.

On 11 August 2004, plaintiff's attorney wrote to defendant, stating his client's intent to open a poker club within the territorial limits of Durham County and seeking defendant's opinion as to the legality of the establishment. On 24 September 2004, defendant responded to plaintiff's inquiry and stated plaintiff's proposed activity was illegal under North Carolina law and local law enforcement would enforce the applicable statutes. Subsequently, on 12 November 2004, plaintiff executed a lease with a third party, which contained a specific provision requiring the plaintiff to obtain written approval from defendant stating poker was a legal activity. In the absence of such approval, the third party would cancel plaintiff's lease and retain the security deposit.

Plaintiff then filed this action and sought a declaratory judgment that poker was a game of skill, as opposed to a game of chance, and thus not in violation of N.C. Gen. Stat. § 14-292 (2005). Plaintiff also

JOKER CLUB, L.L.C. v. HARDIN

[183 N.C. App. 92 (2007)]

sought a temporary restraining order to prevent defendant from enforcing N.C. Gen. Stat. § 14-292. The Durham County Superior Court heard this matter on 23 May 2005 and ruled in favor of defendant, concluding that poker was a game of chance under N.C. Gen. Stat. § 14-292. Accordingly, the trial court denied plaintiff's request for a temporary restraining order. From the trial court's order, plaintiff appeals.

[1] We initially consider whether plaintiff has complied with the mandatory Rules of Appellate Procedure so as to properly preserve its arguments for appellate review. We conclude that plaintiff has committed numerous rule violations, subjecting this appeal to partial dismissal.

North Carolina Rule of Appellate Procedure 10(c)(1) (2006) states, in pertinent part:

Each assignment of error shall, so far as practicable, be confined to a single issue of law; *and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned.* An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, *with clear and specific record or transcript references.*

(Emphasis added). Plaintiff has violated two portions of N.C. R. App. P. 10(c)(1). First, plaintiff has failed to "state plainly, concisely and without argumentation the legal basis upon which error is assigned." *Id.* Plaintiff's assignments of error state:

1. The trial court's failure to enter a Temporary Restraining Order.

R. p.30 (Judgment).

2. The trial court's conclusion of law that poker is a game of chance.

R. p.29 (Judgment).

The first assignment of error is insufficient under N.C. R. App. P. 10(c)(1) because it is broad, vague, and unspecific. *See May v. Down East Homes of Beulaville, Inc.,* 175 N.C. App. 416, 418, 623 S.E.2d 345, 346 (2006) (citations and quotations omitted). Plaintiff has also failed to include clear or specific record or transcript references directing this Court to the assigned error. *See* N.C. R. App. P. 10(c)(1). Specifically, plaintiff refers to record pages 29 and 30 in the refer-

ences accompanying its assignments of error. These record pages contain the last page of a memorandum in support of defendant's motion to dismiss and the certificate of service for the memorandum. Plaintiff fails to reference page 39, the proper record page number of the order. For the foregoing reasons, plaintiff's first assignment of error is beyond the scope of appellate review since it is not set out in the record in accordance with Rule 10. N.C. R. App. P. 10(a) (2006).

Plaintiff additionally failed to comply with N.C. R. App. P. 9(c)(3) (2006), which states: "Whenever a verbatim transcript is designated to be used pursuant to Rule 9(c)(2) . . . appellant shall cause the settled, verbatim transcript to be filed, contemporaneously with the record on appeal, with the clerk of the appellate court in which the appeal is docketed." Pursuant to Rule 9(c)(2), plaintiff designated in the record that testimonial evidence would be presented in a verbatim transcript; however, plaintiff failed to file the appropriate transcript as required by N.C. R. App. P. 9(c)(3)(b). *See State v. Berryman*, 360 N.C. 209, 216, 624 S.E.2d 350, 356 (2006) ("Under North Carolina Rules of Appellate Procedure 7, 9, and 11, the burden is placed upon the appellant to commence settlement of the record on appeal, including providing a verbatim transcript if available").

Lastly, N.C. R. App. P. 28(b)(6) (2006) states, in pertinent part:

Immediately following each question shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. . . . The argument shall contain a concise statement of the applicable standard(s) of review for each question presented . . .

Plaintiff violated N.C. R. App. P. 28(b)(6) both by failing to identify its assignments of error in the pages of the printed record after listing the question presented and by failing to include the applicable standards of review.

Based on the aforementioned rule violations, we dismiss plaintiff's first assignment of error. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360 (2005) ("The North Carolina Rules of Appellate Procedure are mandatory and failure to follow these rules will subject an appeal to dismissal.") (citations and quotations omitted).

[2] However, we conclude that plaintiff's second assignment of error sufficiently complies with the rules and we will thus consider it on

appeal. That assignment of error requires us to determine whether the trial court erred in concluding that poker is a game of chance and thus illegal under N.C. Gen. Stat. § 14-292 (2005). That statute provides as follows:

> Except as provided in Chapter 18C of the General Statutes or in Part 2 of this Article, any person or organization that operates any game of chance or any person who plays at or bets on any game of chance at which any money, property or other thing of value is bet, whether the same be in stake or not, shall be guilty of a Class 2 misdemeanor. This section shall not apply to a person who plays at or bets on any lottery game being lawfully conducted in any state.

*Id.*

We first note that plaintiff has not challenged the trial court's findings of fact, and those findings are thus binding on appeal. *State v. Fleming*, 106 N.C. App. 165, 168, 415 S.E.2d 782, 784 (1992). We must then determine whether the conclusions of law are supported by the findings. However, the findings set forth in Superior Court Judge Orlando Hudson's order amount to a summary of the evidence presented, with no additional facts being found from the presentation of evidence.

Here, four witnesses testified for the plaintiff and one for the State. Roy Cooke ("Cooke"), a professional poker player from Las Vegas, Nevada, testified that he had spent most of his adult life studying poker. Cooke testified that there are certain strategies to poker that allow a player to improve his mathematical odds over the course of a game. He indicated that while in a single hand of poker, chance may defeat a skilled and experienced player, the skilled player is likely to prevail when multiple hands are played.

Frank Martin ("Martin"), a Florida-based consultant who runs poker tournaments, also testified that skill will prevail over luck over a long period of time in the course of a poker tournament. He further stated that there are certain skills that players can develop to consistently win at poker, including patience, memory, and the ability to analyze odds.

Anthony Lee ("Lee"), a casino manager in the Bahamas, testified that there are numerous skills needed for a player to succeed in poker, and that he has failed to develop them himself. Lee testified

**JOKER CLUB, L.L.C. v. HARDIN**

[183 N.C. App. 92 (2007)]

that patience, knowledge of the odds, the ability to read people, and self-control are all necessary skills.

Chris Simmons ("Simmons"), who plays poker in North Carolina, testified that his poker skills have improved greatly since he began studying poker and reading books on winning poker strategies. Simmons stated that in his experience, poker is a game where skill prevails over chance.

Richard Thornell ("Thornell"), a North Carolina Alcohol Law Enforcement officer, was the only witness to testify for the State. Thornell, who stated that he has played poker for more than 39 years, testified that while there was skill involved in poker, luck ultimately prevailed. He testified that he had seen a television poker tournament in which a hand with a 91% chance to win lost to a hand with only a 9% chance to win.

The evidence, as presented by these witnesses, establishes that poker is both a game of skill and chance. All witnesses appeared to agree that in a single hand, chance may predominate over skill, but that over a long game, the most skilled players would likely amass the most chips. From the evidence, Judge Hudson was unable to determine whether skill or chance predominated in poker, but concluded that poker is a game of chance. After a careful examination of the case law interpreting North Carolina's prohibition against wagering on games of chance, we agree.

We have held that an inquiry regarding whether a game is a game of chance or skill turns on whether chance or skill predominates. *State v. Eisen*, 16 N.C. App. 532, 535-36, 192 S.E.2d 613, 615-16 (1972). In *State v. Stroupe*, the North Carolina Supreme Court considered whether a certain type of pool was a game of skill or chance. 238 N.C. 34, 38, 76 S.E.2d 313, 317 (1953). The *Stroupe* Court stated the applicable test as such:

[T]he test of the character of any kind of a game of pool as to whether it is a game of chance or a game of skill is not whether it contains an element of chance or an element of skill, but which of these is the dominating element that determines the result of the game, to be found from the facts of each particular kind of game. Or to speak alternatively, whether or not the element of chance is present in such a manner as to thwart the exercise of skill or judgment.

*Id.* at 38, 76 S.E.2d at 317.

The *Stroupe* Court, in articulating its test, relied on Chief Justice Ruffin's classic summary of the law with respect to games of chance. In *State v. Gupton*, Chief Justice Ruffin wrote:

> [W]e believe, that, in the popular mind, the universal acceptation of "a game of chance" is such a game, as is determined entirely or in part by lot or mere luck, and in which judgment, practice, skill, or adroitness have honestly no office at all, or are [thwarted] by chance. As intelligible examples, the games with dice which are determined by throwing only, and those, in which the throw of the dice regulates the play, or the hand at cards depends upon a dealing with the face down, exhibit the two classes of games of chance. A game of skill, on the other hand, is one, in which nothing is left to chance; but superior knowledge and attention, or superior strength, agility, and practice, gain the victory. Of this kind of games chess, draughts or chequers, billiards, fives, bowles, and quoits may be cited as examples. It is true, that in these latter instances superiority of skill is not always success-ful—the race is not necessarily to the swift. Sometimes an over-sight, to which the most [skillful] is subject, gives an adversary the advantage; or an unexpected puff of wind, or an unseen gravel in the way, may turn aside a quoit or a ball and make it come short of the aim. But if those incidents were sufficient to make the games, in which they may occur, games of chance, there would be none other but games of that character. But that is not the mean-ing of the statute; for, as before remarked, by the very use of those terms, the existence of other kinds of games, not of chance, is [recognized]. The incidents mentioned, whereby the more [skillful] may yet be the loser, are not inherent in the nature of the games. Inattention is the party's fault, and not his luck; and the other obstacles, though not perceived nor anticipated, are occur-rences in the course of nature and not chances.

*State v. Gupton*, 30 N.C. 271, 273-74 (1848).

Chief Justice Ruffin's analysis clarifies the logic underpinning North Carolina's interpretation of the predominate-factor test. It makes clear that while all games have elements of chance, games which can be determined by superior skill are not games of chance. For example, bowling, chess, and billiards are games of skill because skill determines the outcome. The game itself is static and the only factor separating the players is their relative skill levels. In short, the instrumentality for victory is in each player's hands and his fortunes will be determined by how skillfully he use that instrumentality.

Poker, however, presents players with different hands, making the players unequal in the same game and subject to defeat at the turn of a card. Although skills such as knowledge of human psychology, bluffing, and the ability to calculate and analyze odds make it more likely for skilled players to defeat novices, novices may yet prevail with a simple run of luck. No amount of skill can change a deuce into an ace. Thus, the instrumentality for victory is not entirely in the player's hand. In *State v. Taylor*, our Supreme Court noted this distinction. 111 N.C. 680, 16 S.E. 168 (1892).

> It is a matter of universal knowledge that no game played with the ordinary playing cards is unattended with risk, whatever may be the skill, experience or intelligence of the gamesters engaged in it. From the very nature of such games, where cards must be drawn by and dealt out to players, who cannot anticipate what ones may be received by each, the order in which they will be placed or the effect of a given play or mode of playing, there must be unavoidable uncertainty as to the results.

*Id.* at 681-82, 16 S.E. at 169.

This is not so with bowling, where the player's skill determines whether he picks up the spare; or with billiards, where the shot will find the pocket or not according to its author's skill. During oral arguments, counsel for plaintiff analogized poker to golf, arguing that while a weekend golfer might, by luck, beat a professional golfer such as Tiger Woods on one hole, over the span of 18 holes, Woods' superior skill would prevail. The same would be true for a poker game, plaintiff contended, making poker, like golf, a game of skill. This analogy, while creative, is false. In golf, as in bowling or billiards, the players are presented with an equal challenge, with each determining his fortune by his own skill. Although chance inevitably intervenes, it is not inherent in the game and does not overcome skill, and the player maintains the opportunity to defeat chance with superior skill. Whereas in poker, a skilled player may give himself a statistical advantage but is always subject to defeat at the turn of a card, an instrumentality beyond his control. We think that is the critical difference.

For the reasons stated above, we determine that chance predominates over skill in the game of poker, making that game a game of chance under N.C. Gen. Stat. § 14-292 (2005). Accordingly, the decision of the trial court should remain undisturbed.

Affirmed.

Judges GEER and JACKSON concur.