PROGRESS VENDING, INC., ET AL., APPELLEES *v.* DEPARTMENT
OF LIQUOR CONTROL, APPELLANT; COOK ET AL., APPELLEES.

(No. 77AP-769—Decided April 18, 1978.)

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Messrs. Dinsmore, Shohl, Coates & Deupree, Mr. Lawrence A. Kane, Jr., Mr. Mark A. Vander Laan, Messrs. Lindhorst & Dreidame* and *Mr. Ambrose H. Lindhorst,* for plaintiffs-appellee.

*Mr. William J. Brown,* attorney general, *Mr. James E. Uprichard, Jr.,* and *Mr. James M. Guthrie,* for appellant, and defendants-appellee.

WHITESIDE, J. Defendant Department of Liquor Control appeals from a judgment of the Franklin County Court of Common Pleas finding and declaring that pinball machines known as "King Rock" and "Spirit of '76" and machines similarly constructed and operated violated neither R. C. Chapter 2915 nor Section II of Regulation 53 of the Regulations of the Liquor Control Commission and permanently enjoining defendant "from seizing, taking, confiscating, or otherwise destroying" such machines ex-

hibited by plaintiffs through lessees who hold permits issued by the Department of Liquor Control and "from citing, prosecuting, or in any manner interfering with the business of such holders of permits" because of possession or display of such pinball machines.

Plaintiffs have filed a motion to dismiss this appeal for failure of defendant to timely file a transcript of proceedings or to comply with the appellate rules and the local rules of this court with respect thereto. Additionally, defendant has not set forth in its brief filed herein any assignments of error specifically designated as such.

Defendant has caused a transcript of proceedings to be filed in the trial court and transmitted to this court, although not timely and without an extension of time for same; however, defendant has filed a motion to supplement the record by inclusion of the transcript of proceedings. It does not appear that any undue delay in the prosecution of this appeal or any prejudice to plaintiffs has resulted from the failures of defendant to comply with the appellate rules and the local rules of this court with respect to the inclusion of a transcript of proceedings in the record on appeal. Accordingly, in the interests of disposing of this case on the merits, rather than upon a procedural defect, the issues involved being ones of public interest, the motion to dismiss is overruled.

At oral argument, defendant's counsel indicated that the assignments of error are that the judgment of the Common Pleas Court is against the manifest weight of the evidence and is contrary to law. Although not specifically designated or mentioned as assignments of error, the brief of defendant filed herein raises only issues involving such assignments of error. Accordingly, we shall proceed with the merits of this appeal, considering the assignments of error to be as indicated at oral argument. The trial court in the judgment entry made the following findings:

"From the evidence presented herein, the court finds two of the elements of proscribed conduct present in the operation of the pinball machines 'King Rock' and 'Spirit of 76.' These are price and prize. A price is necessary be-

fore the game is played; a prize may be attained by successful play.

"The case hinges upon the part which chance plays in the outcome of the game. As plaintiffs urge, chance affects the result in many endeavors, and a combination of chance and skill is the order of the day.

"Ample evidence was adduced, through testimony and demonstration in the courtroom upon the trial of this cause, of the predominance of skill over chance in playing the machines introduced as subject of the lawsuit.

"Applying the law as it now stands in Section 2915.01 (D), Revised Code of Ohio, the court finds the pinball machines known as 'King Rock' and 'Spirit of '76,' purveyed by the plaintiffs, to be devices invoking skill above chance to effect a successful result."

Thus, the trial court made two basic findings: (1) that neither R. C. Chapter 2915, nor the Liquor Control Commission regulation, prohibit, as gambling devices, pinball machines, the outcome of the play on which is determined predominately by skill, rather than chance, even though a price is charged for the play of the machine, and a prize is awarded for successful play; and (2) that the play of the two pinball machines in question predominately involves skill, rather than chance.

The only statement in defendant's brief which could possibly be considered an assignment of error, although not denominated as such, is the following statement set forth as a heading:

"Liquor Control Commission Regulation LCc-4301: 1-1-53, II prohibits gaming on any game of skill or chance such as pinball machines that reward free games or a free replay of a ball on the attainment of a predetermined score."

Much of defendant's brief, however, is devoted to an argument that the outcome of play of the two pinball machines is determined largely or wholly by chance. However, even that argument recognizes that testimony, including that by expert players, was adduced indicating that skill predominates over chance in the play of the machines in-

volved. In fact, all of the evidence adduced tended to indicate that successful play of the pinball machines in question predominately involves skill. While it may well be that the trier of the facts could have concluded from the evidence that chance predominates over skill in the play of the machines, as urged by defendant, ample evidence was adduced from which it can be reasonably concluded that skill in play of the machines greatly predominates over chance in achieving a successful outcome of attaining the prize rewarded. With respect to the "Spirit of '76" pinball machine, it was stipulated that it "awards one replay for the accumulation of 65,000 points and a second replay if a score of 83,000 is accumulated," but that "through an adjustment in circuitry, replays can be awarded at a lesser or greater accumulation of points."

As to the "King Rock" pinball machine, it was stipulated that:

"The machine possesses a metal gate which is part of the wood partition separating the chute through which the ball is propelled from the playing surface. The gate is opened when the ball makes contact with a mechanism on the playing surface. When open, the gate forces the ball to return to the chute to be replayed by striking it with the plunger. A ball passing by the gate when in a closed position is routed to the bottom of the playing surface and cannot be replayed."

It was further stipulated that, when manufactured, the "King Rock" pinball machine is equipped with a free-play mechanism, but that that mechanism has been removed and that:

"The machine as exhibited is not equipped with any mechanism which provides 'free games,' 'coin payoffs,' nor an additional ball for the accumulation of a certain number of points. The player is entitled to five plays of one ball for his initial investment and may receive an additional number of plays dependent upon the number of times the ball passes through the open gate."

As indicated above, ample evidence was introduced, from which it reasonably could be concluded that the prizes

attained from successful play of the two pinball machines is determined predominately by the skill of the player. Although clear and convincing evidence of this issue was required in order to permit the granting of the injunction, the trial court, as trier of the facts, had sufficient evidence from which it could reasonably conclude that plaintiffs sustained their burden of proof with respect to the predominance of skill over chance in the playing of the games involved. We are unable to find that such conclusion is against the manifest weight of the evidence. Accordingly, defendant's contention that the judgment is against the manifest weight of the evidence is not well taken.

It was stipulated that Section II, of Regulation LCc-1-53 (apparently now known as Regulation 4301:1-1-53[B]), reads, as follows:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any device, machine, apparatus, book, record, forms, tickets, papers, or charts which may or can be used for gaming or wagering or the recording of wages, pools or chances on the result of any contest, or allow or conduct gaming or wagering on such premises on any game of skill or chance."

In support of their contention that the pinball machines in question violate the regulation, defendant relies upon *Westerhaus Co., Inc.,* v. *Cincinnati* (1956), 165 Ohio St. 327, and *Stillmaker* v. *Dept. of Liquor Control* (1969), 18 Ohio St. 2d 200. *Westerhaus* distinguished between lottery and gambling, stating in the ninth paragraph of the syllabus that: "The term 'gambling' includes a lottery but is broader and may encompass more than the term 'lottery.' " In paragraph eight of the syllabus, it is stated that: "In order to have a lottery, the determination as to who gets a prize or how much of a prize he gets must be dependent at least predominately upon the element of chance." In paragraph five of the syllabus, it is stated: "In general, the elements of gambling are payment of a *price* for a *chance* to gain a *prize.*" Specifically, paragraphs

ten and eleven of the syllabus of *Westerhaus* tend to support defendant's position, stating:

"10. Although there can probably be no gamble upon something certain, there can be a gamble on the happening of an event, the happening of which may be largely dependent upon skill, even though dependent upon the skill of one or all of those participating in the gamble.

"11. The element of chance which is necessary in order to have gambling can be supplied by having the happening of some future event determine who gets a prize or how much he gets, at least where such event is not certain to happen and even though the happening of such event is dependent predominately upon skill."

*Westerhaus* specifically held in paragraph twelve of the syllabus that the operation of certain pinball machines constitutes gambling, making such machines gambling machines or devices *per se* within the meaning of former R. C. 2915.15 "notwithstanding that the operation of such machine to attain such efficient score is predominately dependent on the skill of the operator." Similarly, in *Stillmaker* it was held in the third paragraph of the syllabus:

"Where the player of a coin-operated mechanical device for amusement purposes must pay ten cents apiece (a price) initially to activate lighted cards have (similar in nature to bingo cards) with which a score may be achieved, but upon obtaining a score he wins the right to a number of such cards, according to the score) activated on the next play without paying an additional ten cents apiece for them thereby gaining additional amusement (a prize), and there is no guarantee of making any score whatsoever (a chance), all the elements of gambling are present and the coin-operated mechanical device is a gambling device *per se.*"

Former R. C. 2915.15 read, as follows:

"No person shall keep or exhibit for gain or to win money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, other than as is defined in section 2915.10, 2915.12, and 2915.16 of the Revised Code, or keep or exhibit a billiard table for the purpose of

gambling or allow it to be so used. Whoever violates this section shall be fined not less than fifty nor more than five hundred dollars and imprisoned not less than ten nor more than ninety days, and shall give security in the sum of five hundred dollars against further violation of this section for one year.''

Former R. C. 2915.10 and 2915.12 related to lotteries. Former R. C. 2915.16 defined certain gambling devices to include a slot machine and any other machine which by means of the insertion of a coin could deliver any money, property, or other thing of value as the result of the application of an element of chance. Were these statutes still in effect, in light of *Westerhaus* and *Stillmaker,* the machines in question would constitute gambling devices *per se* in violation of those statutes. However, all of these statutes were repealed effective January 1, 1974.

Present R. C. 2915.01(C) defines ''scheme of chance'' as follows:

'' 'Scheme of chance' means a lottery, numbers game pool, or other scheme in which a participant gives a valuable consideration for a chance to win a prize.''

R. C. 2915.01(D) defines ''games of chance,'' as follows:

'' 'Game of chance' means poker, craps, roulette, a slot machine, a punch board, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely or wholly by chance.''

Present R. C. 2915.02(A) proscribes the following types of gambling:

''(A) No person shall:

''(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;

''(2) Establish, promote, or operate, or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit;

''(3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of, information for use in establishing odds or determining winners in connection with bookmaking or with any scheme or game of chance conducted for profit;

"(4) Engage in betting or in playing any scheme or game of chance, except a charitable bingo game, as a substantial source of income or livelihood;

"(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device."

R. C. 2915.04, in part, provides as follows:

"(A) No person, while at a hotel, restaurant, tavern, store, arena, hall, or other place of public accommodation, business, amusement, or resort shall make a bet or play any game of chance.

"(B) No person, being the owner or lessee, or having custody, control, or supervision of a hotel, restaurant, tavern, store, arena, hall, or other place of public accommodation, business, amusement, or resort shall recklessly permit such premises to be used or occupied in violation of division (A) of this section.

"(C) This section does not prohibit conduct in connection with gambling expressly permitted by law."

In light of the definition of "lottery" set forth in *Westerhaus*, the pinball machines in question do not involve a scheme of chance as defined by R. C. 2915.01(C). Similarly, in light of the trial court's finding that skill predominates over chance in the play of the pinball machines in question, the play of such machines does not constitute a game of chance as defined by R. C. 2915.01(D). Although the committee comment states that games of chance are defined substantially in terms of existing case law, including *Westerhaus*, the definition of "game of chance" in R. C. 2915.01 (D) expressly provides that the outcome must be "determined largely or wholly by chance," which is inconsistent with the *Westerhaus* determination that gambling is involved, even though the outcome is determined predominately by skill. In order to constitute a device for the playing of a game of chance, under the present statute, there must be a giving of something of value in hope of gain, but the outcome must be determined largely or wholly by chance. Therefore, if the outcome is not be determined largely or wholly by chance but, instead, is determined largely by skill, the game does not constitute a game of chance, nor

does the machine or. device constitute one,. for the playing of a game of chance. Accordingly, the trial court, in light of its factual findings, correctly determined that the two pinball machines in question do not violate the provisions of present R. C. Chapter. 2915, effective January 1, 1974, although they would have violated former R. C. Chapter 2915 as indicated by *Westerhaus* and *Stillmaker*: No issue is raised, nor determined, as to whether the pinball machines in question may violate municipal ordinances, which may contain broader prohibitions than R. C. Chapter 2915. .

The remaining issue is whether the pinball machines in question violate the regulation of the Liquor Control Commission. The first paragraph of the syllabus of *Kroger Co.* v. *Cook* (1970), 24 Ohio St. 2d 170, holds specifically that:

"Regulation 53, Section II, of the Liquor Control Commission, which prohibits gaming on a game of skill or chance on the premises of a liquor permit holder, is within the powers granted the commission by R. C. 4301.03(B), and is a reasonable. exercise thereof."

However, the *Kroger* case involved a scheme of chance which would constitute a lottery within the definition of *Westerhaus*, with the only issue being whether or not a price was involved. In *Kroger*, whether one would win a prize was determined wholly by chance. R. C. 4301.03(B) has been amended since *Kroger* and presently reads, as follows:

"Rules, regulations, and orders providing in detail for the conduct of any retail business authorized under permits issued pursuant to such chapters, with a view to insuring compliance with such chapters and laws relative thereto, and the maintenance of public decency, sobriety, and good order in any place licensed under such permits. No rule, regulation, or order shall prohibit the sale of lottery tickets issued pursuant to Chapter 3770. of the Revised Code by any retail business authorized under permits issued pursuant to such chapter."

What constitutes "public decency, sobriety, and good order" constitutes a matter of public policy. Formerly, the public policy of Ohio with respect to gambling as establish-

ed by the General Assembly was essentially that set forth in *Westerhaus* in the interpretation of former R. C. Chapter 2915 and specifically former R. C. 2915.15. The General Assembly, however, has seen fit to change the public policy of Ohio with respect to gambling as have the people of Ohio by the amendment of Section 6, Article XV, Ohio Constitution. Under present statutory law, the giving of something for value in hope of gain does not constitute either a game of chance or a scheme of chance where the outcome is determined predominately or wholly by skill, rather than chance. Accordingly, it is no longer against the public policy of Ohio to keep or exhibit for game a device which requires the insertion of a coin to operate the machine and which will entitle the recipient to additional plays or games if a sufficient score is achieved where the operation of the machine to attain such sufficient score is predominately dependent on the skill of the operator. Regulation 4301:1-1-53 (B) (formerly Section II of LCc-1-53), contains two prohibitions. The regulation first prohibits the keeping, exhibiting, possessing on or about permit premises of any device or machine "which may or can be used for gaming or wagering or the recording of wagers, pools, or chances on the results of any contest." Broadly construed, almost everything would be prohibited on permit premises, inasmuch as people can wager on almost anything and may use almost anything for gaming or wagering, including money, which can be used in such games as matching coins and "dollar bill poker."

The second prohibition of the regulation is the allowing or conducting of "gaming or wagering on such premises on any game of skill or chance." Interestingly, the regulation does not prohibit all gambling but only those types of gambling which constitute gaming or wagering. While, as indicated in *Westerhaus,* gambling is a broad term, gaming or wagering, like lottery, does not encompass all forms of gambling.

Words used in a statute or regulation and not specifically defined therein must be construed in light of their ordinary meaning—that is, the meaning which would be con-

veyed to the ordinary person. *Webster's Third New International Dictionary* (1961) defines "gaming" as "the act or practice of playing games for stakes." Similarly, that dictionary defines "wagering" as "relating to the act of one who wagers," and defines "wager" as "to hazard on issue of a contest or on a question that is to be decided or on a casualty: to make a bet * * *."

It is difficult to conceive how the play of the two pinball machines in question could in any way be considered wagering. Gaming, on the other hand, signifies a different form of gambling, that is playing a game for stakes. Very broadly construed, play of the pinball machines in question could constitute gaming since gaming consists of risking money on the outcome of the play of the game. However, as indicated above, the regulation in question should be construed in light of the authority granted to enact the regulation, namely, R. C. 4301.03(B), and the public policy of the state as determined by the General Assembly. It appears to be the present public policy of Ohio not to prohibit gambling where the outcome is determined largely or wholly by the skill of the players where the players are the ones who stand to win the prize that may be attained. On the other hand, where others hazard something of value upon the outcome of a game in which they do not personally participate, the conduct is prohibited as betting, as defined by R. C. 2915.01(B).

In light of the change in Ohio law, and construing the regulation consistently with present Ohio law, we find no error on the part of the trial court in concluding that the two pinball machines in question are not in violation of the regulation. Present R. C. 4301.03(B) specifically permits gambling on permit premises through the sale of lottery tickets authorized by the state. It must, therefore, be concluded to be the intent of the General Assembly that gambling on permit premises is not *per se* contrary to "the maintenance of public decency, sobriety, and good order," and is not contrary thereto, unless the type of conduct involving gambling is prohibited by state law.

This case involves interpretation of statutory provi-

sions and of regulations adopted pursuant thereto, and this court is not free to question the wisdom of such laws, nor to substitute its own judgment as to what laws should be enacted, nor of what regulations should be adopted. However, the regulations must be read consistently with the public policy of the state as determined by the General Assembly. The legislature having changed the public policy of the state with respect to gambling, necessarily the regulation must be construed consistently with that public policy. Accordingly, we are constrained to the conclusion that the trial court did not err in concluding that the two pinball machines in question do not violate present state law, nor the regulation in question.

The evidence supports the trial court's conclusion that the games involved are predominately games of skill, rather than games of chance. In light of such factual finding, the two devices in question are no longer gambling devices *per se* under existing, present state law, although they were under former state law. If any change is to be effected, it must be made by the General Assembly, which chose to amend the state law so as no longer to prohibit certain types of conduct which were previously prohibited as gambling.

Plaintiffs, in addition to the foregoing issues, raise the issue of equal protection of the law, contending that to proscribe the pinball machines in question would deny them the equal protection of the law. It is unnecessary to reach this issue, which was not reached by the trial court, in light of the foregoing conclusions. Defendant's contention that the judgment of the trial court is contrary to law is not well taken.

For the foregoing reasons, that which we have considered to be the assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HOLMES, P. J., and McCORMAC, J., concur.