No. 55,045

GAMES MANAGEMENT, INC., *Appellee,* v. CLARK V. OWENS, district attorney, Sedgwick County, Kansas; ROBERT T. STEPHAN, attorney general, State of Kansas; RICHARD LAMUNYON, chief of police, Wichita, Kansas; JOHNNIE DARR, sheriff, Sedgwick County, Kansas; and JOHN DEKKER, director of law, Wichita, Kansas, *Appellants.*

(662 P.2d 260)

Opinion filed April 29, 1983.

*Roger C. Skinner,* assistant district attorney, argued the cause and *James Flory,* deputy attorney general, *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellants.

*Randall V. Reece,* of Wichita, argued the cause and *Robert E. Burchfiel,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is a declaratory judgment action to obtain construction of K.S.A. 21-4302(4).

The facts from which this controversy arose disclose appellee Games Management, Inc., is a corporation engaged in the business of placing electronic video card games in various businesses and clubs in Wichita. As a result of threatened prosecution by state and local officials, appellee filed an action to enjoin appellants from declaring the machines gambling devices and instituting prosecution. At time of trial the parties stipulated to an amendment changing the lawsuit to a declaratory judgment action.

The evidence adduced at trial showed the appellee owns sixteen machines upon which are played certain video games known as "Double-Up" and "Twenty-One." Twelve of the machines have been placed in various local businesses. The

method of placing the machines is by contract between the appellee and the business or operator. The operator agrees:

"[S]aid electronic amusement card game is an amusement device only, and is not a gambling device, and agrees to utilize the same as an amusement device only. Customer agrees not to award, or to offer awards, to any players in cash, or other prizes or gifts of monetary value and further agrees, that the sole and only award given shall be free additional games on said machine(s)."

Following the execution of the agreement, the machines are placed by Games Management, Inc., in the places of business, and operations begin. Games Management, Inc., sends an employee to the operator's place of business to collect the money from the machine. The employee reads the meters in the machine and records the data on a collection ticket, a copy of which is given to the operator and a copy is retained by Games Management. The money is then counted and the operator receives a check for forty percent of the proceeds.

In the game of "Double-Up," a quarter is placed in the coin slot to activate the machine. The player then pushes a button on the front of the machine which is labeled "deal" whereupon five playing cards appear on a color television-type screen. The game is programmed with a minimum standard for a winning hand such as "jacks or better." The player then must make a decision whether to discard or retain the hand dealt. If he discards any cards, the player must again push the deal button and replacement cards appear on the screen. The object of the game is to attain the best poker hand. The reward for a winning hand is a free replay. The better the hand, the more replays won. The length of a game on the "Double-Up" machine is approximately fourteen seconds. The game of "Twenty-One" is a variation of the poker game known as blackjack. In it the player places a quarter in the coin slot to activate the machine. He then pushes the "deal" button and four cards appear on a color television-type screen. There are two cards dealt to the "dealer" and two cards to the player. The dealer's cards are dealt one card face up and one card face down. The two cards dealt to the player are both face up. Just as in blackjack the player has the option, after seeing his cards, to receive another card or "stand pat." The card sequence is predetermined by the program placed in the machine. The player exercises the option by depressing one of two buttons, either "hit" or "stand." After exercising the option the machine automatically deals cards to the dealer. The side at-

taining the score of twenty-one or closest without exceeding it wins. The reward for winning is two free replays for each quarter placed in the machine. The "Twenty-One" machine takes anywhere from eight to ten seconds to play a game. As in all card games the players of either game have no choice as to what cards are dealt. The evidence did not disclose how many cards are programmed in each machine. Obviously, the programmer can place whatever cards in the machine he desires.

Evidence was introduced concerning the features of the two machines as well as modifications to them which were done after their arrival in Kansas. Both of the machines had "knock-off" switches on the side when shipped from the factory. These were removed by the appellee. However, there is still a way in which games can be knocked off by use of the coin hang-up device in the coin slot. This causes an alarm to sound when a coin is in the slot for more than two-fifteenths of a second. When the "Double-Up" machine was shipped from the factory it could play ten quarters at one time. Also, there was a button which a player could depress which allowed him an opportunity to "double-up" thus giving him a chance to increase the number of games won. Appellee eliminated these features from the machine. The "Twenty-One" machine was originally programmed to play ten coins but was modified by the appellee to play only five at once. The evidence is undisputed that a player receives only free replays in either game as a prize if he wins.

After trial the district court ruled the machines are games of chance but the awarding of free games as a prize did not constitute something of value, thus removing them from the definition of a gambling device. The State has appealed. The appellee has filed a cross-appeal challenging the determination that the machines in question are games of chance.

The sole issue is whether the trial court erred in holding the machines were not "gambling devices" within the meaning of K.S.A. 21-4302(4).

The Kansas legislature has attempted to protect the people of this state from the insidious effect of gambling on the public morals. The criminal code specifies no less than seven offenses which may be charged in relation to this popular pastime. They range from simple "gambling," K.S.A. 21-4303, which is a class B misdemeanor, to "installing communication facilities for gam-

blers," K.S.A. 21-4308, a class E felony. Relevant to this case is "dealing in gambling devices," K.S.A. 21-4306, also a class E felony.

Prosecution of the appellee depends upon whether the machines it deals in are considered "gambling devices." That term is defined in K.S.A. 21-4302(4):

"A 'gambling device' is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, or any token, chip, paper, receipt or other document which evidences, purports to evidence or is designed to evidence participation in a lottery or the making of a bet. The fact that the prize is not automatically paid by the device does not affect its character as a gambling device."

Initially it should be noted that penal statutes, such as the one before the court, are to be construed strictly against the State. *State ex rel. Stephan v. Pepsi-Cola Gen'l Bottlers, Inc.*, 232 Kan. 843, Syl. ¶ 2, 659 P.2d 213 (1983); *State v. Doyen*, 224 Kan. 482, 488, 580 P.2d 1351 (1978).

Three requirements must be met before a machine such as those involved here can be considered a gambling device: (1) There must be consideration; (2) something of value must be offered; and (3) whether the player wins must be determined by chance.

Both parties agree the consideration requirement is met when a player deposits money in the machine. The major argument in this case is whether the free replay which serves as a player's reward for winning is "something of value" within the meaning of the statute. The final argument, rejected by the trial court, is that these are games of skill and thereby removed from the statutory ban.

Prior to 1969, the State's gambling statutes defined a gambling device as something designed for the purpose of "playing any game of chance for money or property." G.S. 1949, 21-915; G.S. 1935, 21-1508. In two different cases this court held the replays received by a person who achieves a certain score on a pinball machine were not "property" as envisioned by the gambling statutes. *State v. One Bally Coney Island No. 21011 Gaming Table*, 174 Kan. 757, 258 P.2d 225 (1953).

In 1969 the relevant language was changed from "money or property" to "something of value." L. 1969, ch. 180, sec. 21-4302(4). Since that time one Kansas case has touched on the issue. In *State v. Thirty-six Pinball Machines*, 222 Kan. 416, 565

P.2d 236 (1977), the court held the pinball machines involved in the case were not gambling devices per se. A pinball machine "which 'pays off' only in free replays," the court stated, "is capable of innocent use and is not a gambling device" in and of itself. 222 Kan. at 421-22.

In *Thirty-six Pinball Machines* the court seems to assume a pinball machine could be considered a gambling device if something more than free replays were offered. As such, one implication of the decision is that a free replay on a pinball machine is not something of value. However, the court did not explicitly state what made the pinball machines "capable of innocent use." It could have been that skill is required to win on a pinball machine.

The State's argument with regard to this issue is well set out in the early case of *Kraus v. Cleveland,* 135 Ohio St. 43, 46, 19 N.E.2d 159 (1939):

"Amusement is a thing of value. Were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives."

See also *Stillmaker v. Dept. of L. C.,* 18 Ohio St. 2d 200, 249 N.E.2d 61 (1969). The opposite view was offered in *Com. v. One Electro-Sport Draw Poker Mach.,* 297 Pa. Super. 54, 61-62, 443 A.2d 295 (1981), quoting from *Wigton's Return,* 151 Pa. Super. 337, 343, 30 A.2d 352 (1943):

"'Bearing in mind that penal laws must be strictly construed, we are not persuaded that the legislature intended a definition of gambling broad enough to make unlawful gaming in which the player, in addition to the pleasure of playing, stands to gain nothing but the right to play again without paying for it and the loser to lose nothing but the compulsion to let him play.'"

The *Electro-Sport* case involved a machine with essentially the same characteristics as the "Double-Up" game involved here. The court held no "reward" was present which would allow this machine to be considered a gambling device. See also *Com. v. One Electronic Poker Game Machine,* 302 Pa. Super. 350, 448 A.2d 1077 (1982).

In the broadest sense virtually anything can be considered "something of value." However, in light of the strict construction required of criminal statutes, the Pennsylvania court offers the better rule. A free replay stays on the machine from which it has been won. It cannot be exchanged for money or other property. If

it is not played it is lost. Accordingly, we hold a machine offering only free replays as a prize does not offer "something of value" and is therefore not a gambling device under K.S.A. 21-4302(4).

Finally, the State offers an additional argument which deserves our comment. It claims the winners of these games are determined by chance because the cards appear randomly, the player having no control over them. It cites *Mills-Jennings v. Dept.*, 70 Ohio St. 2d 95, 435 N.E.2d 407 (1982), and *Angelo Appeal*, 62 Pa. Commw. 397, 437 A.2d 67 (1981), which both involved electronic poker games similar to the "Double-Up" game involved here. Though distinguishable these cases offer some help. Here, the card sequences are electronically programmed in each machine. The small amount of skill required to play the games is clearly overshadowed by pure chance. Thus, we hold "Double-Up" and "Twenty-One" are games of chance and therefore "gambling devices" when something of value is received as a prize for winning.

The judgment of the trial court is affirmed.