255 P.3d 1218 (2011)
45 Kan. App. 2d 1043
THREE KINGS HOLDINGS, L.L.C., and Cobra Crew, L.L.C., Appellants,
v.
Stephen SIX, Kansas Attorney General; Patrick Martin, Chief Counsel, Kansas Racing and Gaming Commission; Nola Foulston, Sedgwick County District Attorney; and Gary Rebenstorf, City Attorney for the City of Wichita, Appellees.
No. 103,457.
Court of Appeals of Kansas.
June 10, 2011.
*1219 James D. Oliver, of Foulston Siefkin LLP, of Overland Park, Jeffery A. Jordan, of Foulston Siefkin LLP, of Wichita, and Edward L. Keeley and Paul F. Good, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellants.
Tim J. Riemann, assistant attorney general, for appellee.
Before HILL, P.J., BUSER, J., and BRAZIL, S.J.
BRAZIL, J.
Plaintiff Three Kings Holdings, L.L.C. (Three Kings) appeals the district court's denial of its petition seeking a declaration that Kandu Challenge is not an illegal lottery under K.S.A. 21-4302. We affirm.
Kandu Challenge is a card game invented by Curtis Shawn Riley, Kurt McPhail, and Shane McCullough. These three individuals are the owners of Three Kings, a Kansas limited liability company that in turn owns the rights to the game. Three Kings has applied for a patent protecting Kandu Challenge. Three Kings licensed the rights to Kandu Challenge to Cobra Crew, L.L.C. (Cobra Crew). Cobra Crew is a Kansas limited liability company that has done business as Highlands Gastropub and Cardroom (Highlands) in Wichita. Highlands hosted games of Kandu Challenge through the licensing agreement with Three Kings.
Kandu Challenge is a modification of the card game of poker. Specifically, it is a form of Texas Hold'Em. The basic objectives and *1220 rules of Texas Hold'Em are unchanged in Kandu Challenge; it is a game played for money and won by the best five-card hand.
Initially, Kandu Challenge changes some of the terminology of poker to decrease the perception of chance. A "game" is called a "contest." The initial "ante" bet is called an "entry fee." A "bet" is referred to as a "challenge," and the "pot" is called the "purse."
The most important modification in Kandu Challenge is the addition of the "spread." After shuffling the deck, the dealer spreads the cards face up across the table for 3 to 5 seconds. This gives the players the opportunity to see all of the cards before they are dealt. A player may object if a card is not visible, and the deck will be respread. After the spread, the dealer collects the cards in order, cuts the deck, and announces the cut card. According to the rules of the game, the visible spread and cut announcement "[provides players] with advanced knowledge of the order of the cards in play thereby offering a contest in which a player's ability to memorize, and recall, the information presented becomes the determining factor in winning."
Another modification from Texas Hold'Em is the elimination of "blind" bets. In Texas Hold'Em, the two players sitting immediately to the left of the dealer are required to place bets before the cards are dealt, thus, their initial bets are blind. In Kandu Challenge, there are no blind bets as players are not required to pay the entry fee until the cut card is displayed. However, players must pay the entry fee before being dealt any cards.
The basic game play of Kandu Challenge is as follows: After the cards are shuffled, spread, and cut, each player who desires to play or "accept the CHALLENGE," places the entry fee in front of their position on the table. The dealer deals two cards to each player and pulls the entry fees into the middle of the table. Beginning with the player to the left of the dealer button, the dealer asks the players if they would like to "issue a challenge" to the other players. Continuing around the table, players may issue, meet, or raise challenges. They may also fold or "surrender" their hand. After the first round of betting is complete, the dealer "burns" the top card on the deck, removing it from play, and deals the next three cards face up in the center of the table. This is the "flop" and these three cards are used by all of the players to create their hands. Another round of challenging continues after the flop. At the conclusion of this challenge round, the dealer burns another card and deals an additional community card onto the center of the table. This is the "turn." The players then engage in another round of challenges. After this action has concluded, the dealer burns one card, then deals a final community card, "the river," and the players begin a final round of challenges. Once all of the challenges are completed, "the remaining players expose their cards and the player(s) with the best five card hand is awarded the prize PURSE."
There are no inherent time restrictions in Kandu Challenge, and a player is free to play as long as they are able. However, the rules require players to pay a fee for "table time" at the rate of $6 every half hour. No table fee is charged for the first 30 minutes a player spends at a table.
Before opening the game to the public, Three Kings and Cobra Crew sought assurances from law enforcement that the game was legal and invited officers from the Wichita Police Department to play the game. According to the game's creators, the officers concluded that Kandu Challenge was a game of skill and was therefore permissible under this state's gambling laws.
On June 22, 2009, Kansas Attorney General Stephen Six, Sedgwick County District Attorney Nola Foulston, Chief Counsel for the Kansas Racing and Gaming Commission Patrick Martin, and Wichita City Attorney Gary Rebenstorf, sent Highlands a letter ordering it to cease and desist from operating the Kandu Challenge game. Highlands stopped hosting the game on June 26, 2009.
Subsequently on June 26, 2009, Three Kings and Cobra Crew filed a petition in Sedgwick County District Court, seeking declaratory judgment that Kandu Challenge was legal and injunctive relief against defendants *1221 Six, Foulston, Martin, and Rebenstorf from applying gambling restrictions to the game.
The district court held a hearing on Three Kings' temporary injunction request on July 21 and 22, 2009. After hearing testimony from the game's inventors, players, experts, and law enforcement, the court denied the injunction. The court found that Three Kings failed to demonstrate the likelihood that it would prevail on the merits of their claim that Kandu Challenge was legal and that it was against public policy for the court to interfere with law enforcement prior to a decision on the merits.
The court held a bench trial on September 8 and 9, 2009. Three Kings presented six witnesses who generally testified in support of the theory that Kandu Challenge was a game of skill that is properly judged in the long run rather than by a single hand.
The game's inventor, Shane McCullough, testified that Kandu Challenge is different from regular Texas Hold'Em and all other card games because the spread provides players the opportunity to see the cards prior to the deal. He testified that the skills involved in Kandu Challenge include choosing a table to play, finding a dealer, reading the dealer, reading the spread, reading the cut, reading opponents, choosing whether to play, folding, and knowing the hand and pot odds. McCullough testified that the only chance event in Kandu Challenge was the location of the cut. He also testified that no one really plays a single hand of poker, that people usually play the game for a long period of time in a single sitting, and that the true aim of the game is to win money rather than a single hand. However, he admitted that there is no prohibition against playing a single hand.
Jared Bruce, a Ph.D. psychologist at the University of Missouri-Kansas City, testified that players can use certain memory techniques to improve their ability to remember the spread and obtain a competitive advantage in Kandu Challenge. He admitted, however, that while he had seen a video of people playing Kandu Challenge, no studies had been done concerning the impact of the spread and memory on competition in Kandu Challenge.
Next to testify was Robert Hannum, Ph. D., a statistics professor at the University of Denver. Hannum testified to his opinion that Kandu Challenge is predominately a skill game. He based this opinion primarily on a statistical analysis of Texas Hold'Em by the Cigital Group (Cigital study) which concluded that skill prevailed over chance in that game because 76% of all Texas Hold'Em hands end before going to "showdown," or a direct comparison of cards to determine a winner. According to Hannum, this indicates the decisions of players, rather than the quality of their cards, is the ultimate determining factor in a game of Texas Hold'Em. He further reasoned that the more complex a game is, the more skill is required to play it and found that Kandu Challenge was more complex than Texas Hold'Em because of the spread. According to Hannum, the spread also decreased the role of chance in the deal, flop, turn, and river cards because the players can know their identity prior to betting. Hannum admitted that no study had been done on the relative level of skill and chance in a single hand. He was unable to identify how long the long run would be.
Three Kings' final three witnesses all had experience in playing Kandu Challenge. Matthew Bikus was a pit boss at Highlands. He testified that he was able to remember 8 to 11 cards and that ability helped him to win several hands. He also testified that he would usually play Kandu Challenge for 3 hours at a time and never just played a single hand before leaving. He never saw anyone play just a single hand.
Pat Bumsted testified that he had learned to pay attention to the spread in Kandu Challenge after another player accurately predicted the cards in Bumsted's hand during a game. Bumsted testified that he could remember seven to eight cards from the spread and has used this knowledge to his advantage on at least one occasion. Bumsted also testified that he had never seen anyone play a single hand and stop.
Finally, Wichita Police Officer Drew Seiler testified that he played Kandu Challenge for *1222 3 to 4 hours and was able to memorize four or five cards in the spread, but that this knowledge never helped him win a hand. When asked his opinion whether Kandu Challenge was a game of skill or chance, Seiler answered that it was a game of chance because there are still too many chance elements.
The State's first witness was Dr. Olaf Vancura, a Ph.D. physicist who currently works primarily as a game designer. Vancura designed a computer simulation to test the relative levels of skill and chance in Kandu Challenge. Vancura's model included eight players of average skill and over the course of hundreds of thousands of simulated games, indicated that skill was about a 40% factor in determining who won. The simulated players in Vancura's model did not memorize the spread cards. Based on his simulation, Vancura testified that a single hand of Kandu Challenge is determined primarily by chance because of the random deal of pocket cards, but admitted that skill predominates over chance in the long run. He stated that he generally thinks of games in the long run and believes that is how poker should be judged.
Human memory expert, Dr. Lester Loschky, testified next for the State. According to Dr. Loschky, the most cards a person can initially remember from the spread in Kandu Challenge is four. Like Bruce, Dr. Loschky thought that it would be possible to use certain techniques to improve memory of the spread cards, but Dr. Loschky was "dubious" that someone could remember more than seven or eight cards in sequence. Dr. Loschky testified that it would be impossible to remember all 52 cards in the deck during the spread.
The State's final two witnesses were Paul Duff and Lemuel Moore, both officers with the Wichita Police Department. Duff testified that he could remember the number on five to six consecutive cards while Moore stated that he could memorize four cards in a row. Both testified that this knowledge provided them with no competitive advantage.
Based upon the evidence presented at the bench trial, the district court found that Kandu Challenge was an illegal lottery under K.S.A. 21-4302. The court noted that a lottery requires a finding of consideration, a prize, and chance. The only issue here was whether Kandu Challenge was a game of chance. The court found that its task was to determine whether chance or skill was the "dominating element that determines the result of the game."
Based on these facts, the court found that Kandu Challenge was a game of both chance and skill, but that there was no "reliable, easy, or practical way to measure" the relative levels of skill and chance. The court found that novice players could remember a series of five cards but that experienced players can improve their ability to remember the cards and obtain a competitive advantage over less experienced players. The court noted however, that the value of the spread is largely dependent upon the location of the cut, "which is a chance event." The court further found that it was not possible for a player to memorize all of the cards in play in order.
The court also noted, because of the similarity between Kandu Challenge and Texas Hold'Em, studies exploring the relationship between chance and skill in Texas Hold'Em were relevant to that same issue in the case of Kandu Challenge. Based upon a study that found the actual strength of the cards held by players in a hand of Texas Hold'Em was not the determining factor in most hands, the court found that players' decisions represent the skill element of poker while the cards dealt were a matter of chance. Consequently, the court found that all of the skill decisions in poker are predicated on the chance events of the cut and deal.
The court then discussed whether the relative level of skill and chance in Kandu Challenge should be judged by the events of a single game or some longer period. Based upon expert testimony presented by both parties, the court found that Kandu Challenge is predominately a skill game when judged over the long run. However, the court was unable to determine exactly what that long run meant. The court noted that the rules of Kandu Challenge provide that the game is played one hand at a time beginning *1223 with the shuffle of the cards and ending when the purse is pushed to the winner. Consequently, there was no long run because nothing in the rules requires players to play more than one hand. The court found that under this single game analysis, the winner is determined primarily by the best hand of cards at the conclusion of the game. Because the distribution of the cards is a chance event, chance is the dominant factor in determining who wins any hand of Kandu Challenge and Kandu Challenge is a lottery under K.S.A. 21-4302 and is prohibited under Kansas law.
Three Kings filed a timely notice of appeal.
There are three elements to a lottery as defined by that statute: (1) consideration, (2) a prize, and (3) the award of the prize is determined by chance. K.S.A. 21-4302(b); State ex rel. Stephan v. Finney, 254 Kan. 632, 644, 867 P.2d 1034 (1994).
It is undisputed that the first two elements are present. The only issue in this case is whether Kandu Challenge is a game of chance. The district court applied a "`dominant factor'" test to answer this question. The source of this test in Kansas is Games Management, Inc. v. Owens, 233 Kan. 444, 662 P.2d 260 (1983). In Games, our Supreme Court held that under the facts of the case, certain video poker games were not prohibited gambling devices. 233 Kan. at 448-49, 662 P.2d 260. After resolving this main issue, the court also examined the State's argument that the winners of the video poker games were determined by chance. The court also stated that "[t]he small amount of skill required to play the games is clearly overshadowed by pure chance." 233 Kan. at 449, 662 P.2d 260. This off-hand statement was in the context of the case, dicta. It is also the sole source for the proffered test in this case. The parties do not cite and we have not found any other Kansas cases that have directly considered the role of chance and skill in determining whether a game is an illegal lottery.
Although the predominate factor test has never been expressly applied by a Kansas appellate court, it has been applied in other states. See Com. v. Dent, 992 A.2d 190, 196 (Pa.Super.2010) (applying predominate factor test in finding that Texas Hold'Em is a game of chance); Joker Club, L.L.C. v. Hardin, 183 N.C.App. 92, 97, 643 S.E.2d 626 (2007) (holding that poker is a game of chance under the predominate factor test); Indoor Recreation Enterprises, Inc. v. Douglas, 194 Neb. 715, 717, 235 N.W.2d 398 (1975) (holding that poker and bridge are predominately games of chance).
Three Kings does not directly challenge the application of the predominate factor test, but argues the court's ruling on that test is based on a faulty premise.

DID THE COURT ERR IN DEFINING A "GAME" OF KANDU CHALLENGE AS A SINGLE HAND?
Three Kings first challenges the district court's conclusion that Kandu Challenge should be evaluated based on a single hand. Three Kings argues that the district court's standard does not reflect the game as the players intend to play it because it does not take into account the fact that Kandu Challenge is generally played for more than a single hand and because it renders certain aspects of the game that are integral to the actual play of poker, such as reading one's opponents and folding, irrelevant. Three Kings also argues that the single-hand standard leads to absurd results.
The parties do not dispute the underlying facts as found by the district court. They do dispute the district court's application of the law to those facts. Consequently, this issue presents a legal question over which this court has de novo review. See Martinez v. Excel Corp., 32 Kan.App.2d 139, 142, 79 P.3d 230 (2003).
The precise legal issue here is whether the skill/chance balance of Kandu Challenge should be analyzed based upon a single handthe shortest period of play allowed under the rules, or based upon some longer period that more accurately reflects the intent of the players. Essentially, we must determine the meaning of a "game" of Kandu Challenge. This is an issue of first impression, and neither party cites authority directly supporting their position.
*1224 In support of its argument, Three Kings cites State v. Durst, 235 Kan. 62, 678 P.2d 1126 (1984). Durst involved the seizure of some electronic video poker machines from a tavern in Kansas City, Kansas. Two Kansas City police officers played the games. They both won free games and were paid cash by the defendant, an employee of the tavern. The officers arrested the defendant and seized the machines, which the defendant did not claim to own. The defendant was found guilty of possessing a gambling device. The State sought to sell or destroy the machines but sent no notice to the defendant or the machines' apparent owner, a vending company. The district court ordered the machines returned to the owner and the State appealed.
On appeal, the State argued that the machines were contraband that should be destroyed. The defendant argued that the machines were capable of innocent use and were not gambling devices or contraband per se. Citing its holding in State v. Thirty-Six Pinball Machines, 222 Kan. 416, 422, 565 P.2d 236 (1977), the court noted that it is the "`actual use'" of the machine "`that determines whether it is possessed and used as a gambling device.'" 235 Kan. at 64, 678 P.2d 1126. When players are awarded with a cash payoff, they were given "`something of value,'" which is prohibited by the statute. 235 Kan. at 65, 678 P.2d 1126. However, the court noted that award of free games is not "`something of value'" as contemplated by the statute. Because the machines could be used innocentlyreward players with free games rather than cashthey were not contraband per se. 235 Kan. at 65, 678 P.2d 1126. Three Kings argues that Durst stands for the proposition that a game should be judged as it is "actually played" in relation to the intent of the players.
Three Kings' reading of Durst is overly broad. Initially, the intent of the players had nothing to do with the court's conclusion that the video poker machines in Durst were not illegal contrabandeven assuming that the court made that finding. The controlling fact was that the tavern owner paid the players in cash rather than free games. The cash payment was something of value, which was an illegal use of the games. Even that finding, however, was not relevant to the court's ultimate finding that the owner's due process rights were violated. The Durst court based its decision on a finding that the State's failure to properly commence any action against the owner of the machines or the machines themselves violated due process. 235 Kan. at 68, 678 P.2d 1126.
Three Kings next argues that the single-hand standard ignores skills that are integral to the play of Kandu Challenge. Specifically, Three Kings argues that the single-hand test ignores the important skills of reading one's opponents and of folding a hand of Kandu Challenge. Three Kings claims that reading one's opponent gives the player an advantage because certain "tells" can betray the opponent's hand and the player can adapt their strategy accordingly. According to Three Kings, the skill of folding is important because it prevents players from losing more money.
Finally, Three Kings contends that the district court's decision leads to absurd results because it would cause generally recognized games of skill to be treated as games of chance, and prohibited games of chance to be treated as games of skill. Three Kings uses the example of golf and claims that while skill "surely predominates in determining who wins 18 holes of golf," "chance might predominate in determining the outcome of one hole." According to Three Kings, analyzing golf based on a single hole would render golf a game of chance and ignore other skills that are important to the game. Three Kings alleges that the inverse would occur should video poker, a recognized game of chance, be evaluated in the long run. Three Kings alleges that video poker is a game of skill in the context of a single hand.
The State counters that the suggestion to evaluate the game as it is "actually played" or according to the intent of the players is flawed and that the nature of the game itself must control. When one plays Kandu Challenge for an extended period of time, they are, in fact, playing multiple discrete games, not one extraordinarily long match. According to the State, if games were to be defined based on the subjective intent of the players, *1225 then whenever a player thinks he is not gambling, then he must not be gambling.
The State also points out that reading one's opponent is a "purely speculative" endeavor because there is no guarantee that any player will play the same player again, as there is no requirement that anyone play more than one hand. While folding does provide protection from additional loss, it also guarantees that the player folding will not win the hand. Furthermore, the State points out that folding is an admission by the player that he has, by chance, received what he or she believes are inferior cards.
Finally, concerning Three Kings' golf analogy, the State points out that the issue is not whether a single golf hole can be won by skill or chance, it is the relative role of skill and chance in determining the outcome of any such contest. Further, the game is not judged by a single hole, but rather by all single holes.
Also, the State points out that the video poker analogy in inapposite. Citing a statement in United States v. 294 Various Gambling Devices, 718 F.Supp. 1236, 1243 (W.D.Pa.1989), Three Kings asserts that skill predominates over chance in the short-term game of video poker. However, the State argues this assertion is not supported by the opinion and there is no authority supporting the contention that video poker is a skill game, regardless of the context.
The real meat of the issue is whether the subjective intent of the players or the rules of the game should control the court's definition of a game for the purposes of determining whether that game is one of skill or chance. The parties do not cite any cases that discuss this issue and we have only located one, Bell Gardens Bicycle Club v. Department of Justice, 36 Cal.App.4th 717, 42 Cal.Rptr.2d 730 (1995), rev. denied October 26, 1995.
In Bell Gardens, some card clubs had offered a game called "jackpot poker." 36 Cal.App.4th at 721, 42 Cal.Rptr.2d 730. In this game, a portion of the pot for each hand is withdrawn and held in a separate jackpot fund. This jackpot accumulates "`until a player in the lowball game achieves a hand with a particular combination of cards under specified conditions. . . .'" 36 Cal.App.4th at 721, 42 Cal.Rptr.2d 730. The jackpot is awarded separately from the pot for each hand and the feature does not interfere with the normal play of the game.
The card clubs sought declaratory and injunctive relief against various state and local officials after the issuance of an attorney general's opinion finding that jackpot poker was an illegal lottery. Lotteries are illegal under California statute, but poker is legal on a local option basis. After a hearing, the district court found that jackpot poker was not a lottery and the State appealed.
Much of the court's analysis of the appeal is not relevant here, but the discussion of the severability of the jackpot feature from the normal game of poker is revealing. 36 Cal. App.4th at 743-44, 42 Cal.Rptr.2d 730. Based upon expert testimony, the court found: "In `regular' poker games, the winners are clearly defined at the end of each hand, the players win the amount placed in a common pot during the game; and winning is dependent upon both luck and skill." 36 Cal.App.4th at 743, 42 Cal.Rptr.2d 730. The court went on to find that the jackpot component was an illegal lottery that could be severed from the legal poker game. 36 Cal. App.4th at 746-48, 42 Cal.Rptr.2d 730.
Poker is unique among games in that short-term losses can help reap long-term gains, and the game of poker may indeed be larger than a hand of poker. But this court still must have a useable standard under which to judge the game. As the district court found, the proffered long-run standard is illusory because it has no end game. Kandu Challenge must be judged on the basis of a game: something with a discrete beginning, end, and an ascertainable winner. The rules of Kandu Challenge provide that one hand composes a discrete unit of play: it has a beginning, middle, and end. The winner of each hand is awarded the purse. Bell Gardens is persuasive authority that a game of poker or Kandu Challenge should be defined as a single hand because a winner is ascertainable after each hand. The district court correctly found that the only way to judge *1226 Kandu Challenge is on the basis of a single hand.

DID THE COURT ERR IN FINDING THAT KANDU CHALLENGE IS A GAME OF CHANCE UNDER THE SINGLE-GAME STANDARD?
Next, Three Kings argues, even if the game is judged under the single-hand standard, the district court's factual findings do not support its legal conclusion.
Initially, the parties disagree on this court's standard of review of this issue. Three Kings contends that this court has de novo review because the district court's conclusion that Kandu Challenge is predominately a game of chance is a legal finding.
This issue has not yet been confronted by Kansas appellate courts. Other states have found that the determination of whether a game is dominated by skill or chance is a factual question. Morrow v. State, 511 P.2d 127, 130 (Alaska 1973); Cossack v. City of Los Angeles, 11 Cal.3d 726, 732, 523 P.2d 260, 114 Cal.Rptr. 460 (1974); Glascock v. State, 10 Mo. 508 (1847); Progess Vending, Inc. v. Department of Liquor Control, 59 Ohio App.2d 266, 270, 394 N.E.2d 324 (1978). We will follow the persuasive authority of other states and treat the district court's conclusion that Kandu Challenge is a game of chance as a factual finding.
Because this issue presents a fact question, we review the district court's findings for substantial competent evidence. Substantial competent evidence is such legal and relevant evidence as a reasonable person might regard as sufficient to support a conclusion. Hodges v. Johnson, 288 Kan. 56, 65, 199 P.3d 1251 (2009). An appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact. 288 Kan. at 65, 199 P.3d 1251.
In evaluating whether Kandu Challenge was a game of chance, the district court first looked to Texas Hold'Em because of the similarities in the two games. The court looked at the Cigital study and noted that the decisions made by players "represent the skill element" of both games "while the cards in play represent the chance element." The court found that in the case of Kandu Challenge, "there is an element of chance which affects every skill decision made thereafter." The court found that in a single game, "betting is based largely on the strength of the hold cards which are determined entirely by chance." The court ultimately found that "the distribution of cards will predominately determine the outcome of a single game of Kandu Challenge" and that consequently, chance is the dominant factor in determining the outcome of a single game of Kandu Challenge.
Three Kings first argues that the results of the Cigital study compel a finding that Texas Hold'Em is a game of skill. Three Kings argues that the court finding that ultimately the best poker hand wins only 12% of the time undercuts its ultimate ruling. Our reading of the record shows that the district court merely recited what the study said, not its agreement with its conclusions. Similarly, Three Kings' assertion that the trial court specifically held the study showed that the strength of the cards held by a player at showdown, the chance element of the game is not the determining factor in most hands of Texas Hold'Em, removes the court's finding from its context. What the court actually said was that the Cigital study is evidence that the actual strength of the cards held by a player at showdown is not the determining factor. This statement by the court merely recognizes the Cigital study's findings, it provides no indication the court's agreement with those findings, and was certainly not a specific holding by the court.
Three Kings contends that because the Cigital study found that 76% of hands end before showdown and that the best poker hand wins only 12% of the time is conclusive evidence that poker is dominated by skill. While the district court acknowledged these findings, it still found that even though players make decisions based on skill, those decisions are dependent on chance events. Following the district court's reasoning that decisions are predicated on chance events, the State notes that when a player makes a decision to fold his or her cards, that decision is always based in large part or in total on the random distribution of the cards that results in a continually shifting value of *1227 one's hand throughout the course of a game. The Cigital study does not control the outcome here.
Three Kings next argues that poker and Kandu Challenge are not games of chance because there is no betting in either game. The basis for this argument is the contention that a bet in poker is really a move in any other game. It is a strategic maneuver designed to provoke a desired reaction from an opponent.
This argument ignores, without challenging the district court's finding, that all of these "moves" are predicated on chance events. Three Kings never challenges the court's findings that the order of cards in the spread, the placement of the cut, or the ultimate location of the cards dealt are chance events, but they argue here as though poker is a pure game of skill governed solely by the wits of the players. This argument is not supported by the record and is not persuasive.
While the experts who testified at trial disagree whether chance dominates over skill in poker, the court's finding is supported by the weight of authority from other states. Com. v. Dent, 992 A.2d 190, 192 (Pa.Super.2010), is the most recent and definitive case on the issue. In Dent, the Pennsylvania court was confronted with this question in the specific context of Texas Hold'Em. The court applied the predominate-factor test. 992 A.2d at 192-93. After reviewing the existing case law on whether poker was a game of chance or skill, the court found that "while the outcome of poker may be dependent on skill to some degree, it is predominately a game of chance. . . . [While] skill can determine the outcome in a poker game, players are still subject to defeat at the turn of the cards." 992 A.2d at 196. See also Plato's Cave Corp. v. State Liquor Authority, 115 A.D.2d 426, 496 N.Y.S.2d 436 (1985) (holding that the outcome depends materially on the draw of the cards).
In Joker Club, L.L.C. v. Hardin, 183 N.C.App. 92, 99, 643 S.E.2d 626 (2007), the Court of Appeals of North Carolina found that poker is a game of chance because it "presents players with different hands, making the players unequal . . . at the turn of a card." The court distinguished poker from other games like golf and bowling in which the players are "presented with an equal challenge, with each determining his fortune by his own skill." 183 N.C.App. at 99, 643 S.E.2d 626.
Conversely, we have found only one case which suggests that poker is a game of skill. In Bell Gardens, the California court found that poker was a legal game of skill, but the issue of whether poker was a game of skill was not directly in front of it. The precise issue there was whether the jackpot poker feature was a game of skill or chance. Whether the game of poker was a game of chance was irrelevant because poker was specifically excluded from the state-wide ban on a number of card games and legal on a local option basis.
After reviewing the record on appeal, we conclude there is sufficient competent evidence to support the court's finding that the specific attributes of Kandu Challenge do not remove it from the realm of chance. As noted above, the court specifically found that although players who can develop their ability to remember cards in the spread have a competitive advantage, the value of their knowledge "is dependent in large part on those cards' relation to the cut, which is a chance event." This finding is supported by the record and is not rebutted by Three Kings. We affirm the district court.
Affirmed.